UNITED STATES, Appellee,

v.

Private E2 Gary J. CLEMENTS, SSN 153–64–1584, United States Army, Appellant.

CM 440849.

U. S. Army Court of Military Review.

21 Jan. 1982.

Major Raymond C. Ruppert, JAGC, Major James F. Nagle, JAGC, and Captain John D. Martin, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, Major John T. Meixell, JAGC, and Captain Mark S. Julius, JAGC, were on the pleadings for appellee.

Before MITCHELL, MILLER and LEWIS, Appellate Military Judges.

### OPINION OF THE COURT

MITCHELL, Senior Judge:

Appellant was convicted by members at his general court-martial of rape, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (1976). He was sentenced to a bad-conduct discharge, confinement at hard labor for three years, total forfeitures, and reduction to Private E–1.

The record of trial reveals that on the evening of 29 June 1980, the victim, Esperanza Senior, and her sister Emilia visited Fort Davis, Panama, for the purpose of inquiring about an upcoming Fourth of July party. Here they met with a friend, Private Max Lomax in the company of the appellant. The group walked to a spot outside a barracks where they conversed about life in Panama. While there, several individuals came up and spoke with Lomax and one of them handed him a room key. After a while, Esperanza asked Lomax to take her

for a walk around the building. Appellant remained with Emilia. Behind the building, Lomax told the victim to stop and wait there for him. He disappeared into the barracks. Meanwhile, Emilia became concerned for her sister. Thereupon, appellant left ostensibly to search for Esperanza. After awhile several men approached the victim and threw a towel over her. She was forced into an upstairs room in the barracks where she was attacked, stripped, thrown onto a bare mattress, and successively raped. On at least one occasion, she was also anally sodomized. Esperanza identified appellant as one of her abductors. She also testified that during the episode, appellant stuffed a towel in her mouth when she tried to scream. He also tried to insert his penis into her mouth but was frustrated by her struggles. Eventually he penetrated her vagina. After he finished, appellant went outside to Emilia and told her he had been unable to find Esperanza. Emilia departed, taking a bus home without her sister. When Esperanza's attackers tired of her at 0200 hours, she was bundled into a taxicab and shipped off post. After she reported the incident, appellant and ten other soldiers were apprehended and charged with rape.

Appellant's defense was based upon consent. He testified that he believed Esperanza was willing to submit to the sexual demands of those in the room. Believing her consent extended to him he placed his penis between her legs but was unable to achieve an erection. He denied participating in her initial abduction or placing a towel in her mouth.

During an investigation conducted pursuant to Article 32, UCMJ, 18 U.S.C. § 832 (1976), Esperanza Senior was questioned by the Government representative and cross-examined by two of eleven defense lawyers before she suffered a nervous breakdown for which she was admitted to a mental health facility. When after a week it appeared as if she could again testify, she refused to continue. After repeated attempts to obtain her voluntary appearance, the investigating officer ruled that she was unavailable and completed the hearing without her.

At trial, appellant's defense counsel made a motion to reopen the Article 32 investigation and order the appearance of the prosecutrix, Ms. Senior, or, alternatively, that the court compel her to submit to a deposition. The military judge denied both the request to reopen the Article 32 and the request to order a deposition.

I

Appellant contends he was denied a due process right to cross-examine Esperanza Senior at the Article 32 investigation. We disagree.

 Article 32 does not give an accused the absolute right to cross-examine adverse witnesses. It provides that at such investigations an accused shall be given the right to cross-examine witnesses "if they are available." Where a request for the production of an adverse witness is made, the determination of availability rests as a matter of necessity within the sound discretion of the investigating officer. *United States v. Roberts*, 10 M.J. 308 (C.M.A.1981). In the instant case, this determination was based upon Esperanza Senior's adamant refusal to testify at any future Article 32 hearings following her nervous breakdown and hospitalization. As she was a foreign national, compulsory process under Article 46, UCMJ, 10 U.S.C. § 846,[1] was not available to otherwise compel attendance at a court-ordered reopening of the Article 32 hearing. As the military judge did not abuse his discretion in finding that the investigating officer's determination was neither unreasonable nor arbitrary, we will not disturb his ruling.

 In *United States v. Chestnut*, 2 M.J. 84 (C.M.A.1976) the Court of Military Ap-

---

1. Article 46 concerns the service of process in court-martial cases to compel witnesses to appear and testify. Such process is similar to that which courts of the United States may lawfully issue and runs *only* to any part of the United States, or the Territories, Commonwealths, and possessions.

peals held that a military judge might, in lieu of reopening the Article 32 investigation grant a motion for a continuance to depose the witness. Failure to grant the motion in *Chestnut*, required reversal. There, however, the court found the trial judge's denial constituted an arbitrary adoption of the investigating officer's "mere assumption of unavailability." Such is not the case here. Moreover, in denying the motion in the instant case, the trial judge offered counsel three alternatives: first, a deposition if the witness were willing to appear; second, an interview of the witness prior to the trial; and, third, a continuance after direct examination to allow the defense to prepare for cross-examination. It does not appear from the record that counsel sought to determine Esperanza Senior's amenability to the first two alternatives and no motion for a continuance was made after Esperanza's direct testimony. Failure to pursue these remedies suggests that the denial, assuming it was error, was nonprejudicial.[2]

## II

█ Appellant contends that the evidence is insufficient to sustain a conviction of rape. We disagree. The testimony of Esperanza identifies appellant as one of the assailants. The testimony of an observer who saw the appellant in the room with his pants down approaching his victim who was naked and being held down by other soldiers, as well as the appellant's own incriminating statement that he was present during the episode and concealed Esperanza's whereabouts from her sister are sufficient in our view to convict appellant either un-

der the theory that he personally raped the victim or that he aided and abetted those that did.

## III

█ Appellant contends the pretrial advice was deficient as it did not apprise the convening authority of a material fact: namely, that the victim refused to undergo full cross-examination by all eleven defense counsel. The test for materiality is whether there is a fair risk the omission of fact would mislead the convening authority in his prosecutorial decision to determine the appropriate level of court-martial or what charges should be referred. *United States v. Foti*, 12 U.S.C.M.A. 303, 30 C.M.R. 303 (1961); *United States v. Skaggs*, 40 C.M.R. 344 (A.B.R.1968). Examined in this light we are satisfied that information that the victim had refused further cross-examination because she had suffered a mental breakdown would not inure to the accused's benefit by changing either the level of court-martial or the charges referred. Assuming this advice should have been included, a later oral communication cured any conceivable error. *United States v. Treadwell*, 7 M.J. 864, 866 n.2 (A.C.M.R.1979).

## IV

█ We find that the investigating officer did not violate his role as a quasi-judicial officer under Article 32, UCMJ, by consulting without notice to defense counsel with an impartial legal advisor who in no way served as a member of the prosecution.[3] *United States v. Payne*, 3 M.J. 354

---

**2.** An analogous situation exists for a civilian accused who at a preliminary hearing requests a material witness be made available. Although the courts generally favor production, at least where the witness will have some bearing on the determination of probable cause, case law suggests that the right to confront and cross-examine witnesses at pretrial hearings is not absolute. *Coleman v. Burnett*, 477 F.2d 1187 (D.C.Cir.1973); *Ross v. Sirica*, 380 F.2d 557 (D.C.Cir.1967). A witness may be excused from testifying at a preliminary hearing where physical or psychological harm might ensue. *Washington v. Clemmer*, 339 F.2d 715 (D.C.Cir.

1964). The courts have also recognized that rape victims, especially where the crime is committed under aggravated circumstances, may undergo substantial risk of serious psychological harm by testifying. *See generally Warren v. United States*, 30 Cr.L. 1023 (D.C. Cir. October 6, 1981); *People v. Gomez*, 26 Cal.App.3d 225, 103 Cal.Rptr. 80 (1972); *People v. Lombardi*, 39 A.D.2d 700, 332 N.Y.S.2d 749 (1972) aff'd 33 N.Y.2d 658, 348 N.Y.S.2d 980, 303 N.E.2d 705 (1973).

**3.** Captain Warthen, the legal advisor, occupied the position of Chief of Administrative Law and

(C.M.A.1977); *United States v. Grimm*, 6 M.J. 890 (A.C.M.R.1979). Receipt of such nonsubstantive advice as was given in this case does not impugn the standards of neutrality, detachment, and independence required by the Code and paragraph 34, Manual for Courts-Martial, United States, 1969 (Revised edition). Accordingly there was no error.

### V

Finding no prejudice to the appellant from the post-trial delay, there was no reversible error. *United States v. Banks*, 7 M.J. 92 (C.M.A.1979).

The findings of guilty and the sentence are affirmed.

Judge MILLER and Judge LEWIS concur.

as part of his duties routinely advised Article 32 officers.