UNITED STATES, Appellee,

v.

John W. REYNOLDS, Major, U.S. Army, Appellant.

No. 51085.
CM 443711.

U.S. Court of Military Appeals.

July 13, 1987.

For Appellant: *Captain Scott A. Hancock* (argued); *Colonel Brooks B. La Grua, Lieutenant Colonel William P. Heaston, Captain Harry L. Williams, Jr., Captain Lorraine Lee* (on brief); *Colonel William G. Eckhardt* and *Captain Michael D. Graham.*

For Appellee: *Captain Mark E. Frye* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Joseph A. Rehyansky* (on brief); *Lieutenant Colonel Gary F. Roberson, Captain Dean C. Berry, Captain Denise K. Vowell.*

*Opinion of the Court*

COX, Judge:

Tried by general court-martial,[1] this appellant was convicted of a Charge and specification under Article 132, Uniform Code of Military Justice, 10 U.S.C. § 932, alleging he made a false claim against the United States Government. We granted review to consider three issues:

I

WHETHER THE MILITARY JUDGE ERRED BY NOT ORDERING A NEW ARTICLE 32 INVESTIGATION PURSUANT TO THE DEFENSE MOTIONS TO DISQUALIFY THE PRESIDING ARTICLE 32 OFFICER WHO WAS ACTING IN A QUASI–JUDICIAL CAPACITY AND WHO VIOLATED THE ABA CODE OF JUDICIAL CONDUCT CANONS 2 AND 3; SPECIFICALLY, THE ABA CODE'S MANDATE AGAINST THE APPEARANCE OF IMPROPRIETY COUPLED WITH THE DUTY OF A JUDGE TO ADMINISTER HIS OFFICE IMPARTIALLY AND DILIGENTLY.

II

WHETHER TRIAL COUNSEL'S VIOLATION OF THE ABA CODE OF PROFESSIONAL RESPONSIBILITY'S CANON 5 WHICH DICTATED HIS WITHDRAWAL FROM THE TRIAL OF THE CASE AFTER IT BECAME APPARENT THAT FELLOW MEMBERS OF HIS OFFICE OUGHT TO BE CALLED AS WITNESSES FOR THE PROSECUTION, IMPERMISSIBLY INFECTED THE TRIAL WITH AN AURA OF IMPROPRIETY TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED.

III

WHETHER THE MILITARY JUDGE ERRED BY ABANDONING HIS IMPARTIAL ROLE AND BECOMING A PARTISAN ADVOCATE FOR THE GOVERNMENT WHICH DENIED APPELLANT A FAIR TRIAL.

We have closely examined the record of trial and, after considering the arguments before us, conclude that none of these asserted errors merits relief.

The first two granted issues require an examination of this apparently typical Army staff judge advocate's office. At least three subdivisions were directly involved in this trial. It is a matter of record that a claims examiner, Mr. Dennis Jones, of the

Claims Division
Staff Judge Advocate's Office
Headquarters, U.S. Army Garrison
Fort Sam Houston, Texas 78234

first discovered an irregularity in the claim submitted by appellant. Mr. Jones had been informed by the appraiser of damages that the submitted amounts were incorrect and that certain additions had been made. Pursuant to receipt of this information,

---

1. Appellant was sentenced to 1 year's confinement and $500 forfeiture per month for 12 months. This was approved by the Convening Authority and affirmed by the Court of Military Review. 19 M.J. 529.

charges were drafted against appellant. In connection with these charges, Captain Steven Thomas of the

Legal Assistance Division
Staff Judge Advocate's Office
Headquarters, U.S. Army Garrison
Fort Sam Houston, Texas 78234

was appointed as the Article 32, UCMJ, 10 U.S.C. § 832, Investigating Officer. Likewise, trial counsel prosecuting this case, Captain William Shackelford, and his assistant, Captain Emile Holiner, were drawn from the

Criminal Justice Division
Staff Judge Advocate's Office
Headquarters, U.S. Army Garrison
Fort Sam Houston, Texas 78234

Captain Duncan Currie, who was appointed trial defense counsel, was drawn from

The U.S. Army Trial Defense Service
Fort Sam Houston, Texas 78234

## I

■ Granted Issue I questions the impartiality of the Article 32 Investigating Officer, Captain Thomas. As we have stated, the appointed Article 32 officer must be impartial and, as a quasi-judicial officer, is held to similar standards set for a military judge. *United States v. Collins*, 6 M.J. 256 (C.M.A. 1979). Thus, this "discovery proceeding . . . stands as a bulwark against baseless charges." *United States v. Samuels*, 10 U.S.C.M.A. 206, 212, 27 C.M.R. 280, 286 (1959). To ensure this, paragraph 34(*a*), Manual for Courts-Martial, United States, 1969 (Revised edition), directed that an investigating officer "should be a mature officer, preferably an officer of the grade of major . . . or higher, or one with legal training and experience." Although it may not be fatal that the Article 32 Investigating Officer was junior in rank to the accused, and we note the defense did not challenge the investigating officer on this basis, we consider it a gross breach of

military protocol and courtesy to appoint one who is junior in rank to preside over matters involving a person of higher rank. *See* Art. 25(d)(1), UCMJ, 10 U.S.C. § 825(d)(1).[2]

Based on Captain Thomas' employment and associations in the Legal Assistance Division of the Staff Judge Advocate's Office, appellant asserts that his impartiality might reasonably be questioned when acting in a quasi-judicial function and that he thus violated the ABA standards requiring recusal in such an instance. *See* Canons 2 and 3, ABA Code of Judicial Conduct. In connection with this defense claim, we note that the investigating officer laid bare in his testimony at trial the extent of his association with the principals at trial, who were members of other divisions of that office. That evidence, in fact, reveals no partiality calling for recusal.

■ The investigating officer testified that his social and professional contact with trial counsel and a potential government witness was limited and that no attempt of any kind was made to influence his determination of probable cause. We conclude that there is no appearance of impropriety shown in the foregoing inter-office relationships. The divisions, while subsumed administratively, actually operated as separate subject-matter entities.[3] There is no absolute bar to all contact between an Article 32 officer and all members of a staff judge advocate's office. *See, e.g., United States v. Clements*, 12 M.J. 842 (A.C.M.R.), *pet. denied*, 13 M.J. 232 (1982). Moreover, Captain Thomas testified that he had never discussed the case with trial counsel. It is further noted that, during the Article 32 proceeding, he explicitly overruled trial counsel to grant the defense additional preparation time. The record reveals no partiality in fact. We conclude that no prejudice inured to appellant due to this investigating officer's prop-

---

**2.** We note with disapproval the appointment here of a junior officer, even though a licensed attorney, to investigate charges against a senior officer—a result to be avoided even if not strictly prohibited.

**3.** This is not to be understood as vitiating the entity relationship discussed in *United States v. Johnson*, 4 M.J. 8 (C.M.A. 1977).

er exercise of his duties. *See United States v. Davis*, 20 M.J. 61 (C.M.A. 1985).

## II

■ Appellant goes on to assert that trial counsel should have withdrawn from this case, in that he knew that a false claim had been filed with his "office," requiring testimony from witnesses in the claims division. Counsel cites Rule 1.10 of the ABA Model Rules of Professional Conduct (1983) and asserts that separate divisions of a staff judge advocate's office comprise the same "firm." Thus, his argument proceeds, Disciplinary Rule 5–101(B), ABA Model Code of Professional Responsibility (1980), mandates that "[a] lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness."

We do not agree that a staff judge advocate's office is strictly analogous to a larger "firm." These various military lawyers provide a myriad of legal needs for servicepersons and are not primarily motivated by the profit maximization of the association. Thus, "[t]he economic ties that bind the members of a private law firm are wholly absent." ABA Committee on Ethics and Professional Responsibility, Informal Op. 1235 (1972).

Furthermore, even if the analogy were closer, we observe from the record that the testimony from the members of the claims office related to collateral matters: administrative processing of claims and discovery of possible irregularities. In contrast, appellant defended himself on the basis of mistake of fact; that he had inadvertently submitted a personally marked draft of the claim which he intended to use to appeal any lower award. Thus, the witnesses' testimony was essentially unopposed and related to uncontested matters. In view of the actual testimony of the claims office witnesses, even if a staff judge advocate's office were analogous to a law firm, appellant's argument must fail. ABA Disciplinary Rule 5–101(B)(1) and (B)(2).

## III

■ Public confidence in the integrity and impartiality of a judge is sustained in large part by the conduct of a judge during the proceeding. *See* Canon 2A, ABA Code of Judicial Conduct. In the military, a judge may not abandon his role as an impartial party and assist in the conviction of a specific accused. *United States v. Lindsay*, 12 U.S.C.M.A. 235, 30 C.M.R. 235 (1961). He does not, however, lay aside impartiality when he asks questions in the appropriate case to clarify factual uncertainties. Para. 54a, Manual, *supra; see United States v. Hobbs*, 8 M.J. 71 (C.M.A. 1979).

■ We conclude that the facts of this case do not demonstrate an abandonment by this military judge of his impartial role. The record reflects a breakdown of professional decorum on the part of *all* the attorneys involved leading certainly to a concomitant decrease in professionalism. We strongly discourage this type of petty behavior as unworthy of the high standards required by the military justice system. Nevertheless, we observe that the record does not show an abandonment of the requisite judicial impartiality.

Three examples of questioning are cited by appellant in order to buttress his position. The first involved admission of prosecution exhibit 2 for identification, a document ultimately admitted after certain judicial inquiries as an accurate photocopy of the originally submitted claim. *See* Mil.R. Evid. 1003, Manual, *supra.* These questions were not improper. The second example involved the judge's comments in an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session regarding trial counsel's examination of Special Agent Keller and the military judge's response to defense counsel's objection. While these comments were harsh, they reflected the judge's proper control of the proceedings over which he was presiding.

The third example involved testimony of appellant himself who defended his claim-submission on the basis that his "working

papers" had been inadvertently submitted. Earlier appellant had testified that he photocopied the "working papers" himself at a convenience store; later he asserted that his secretary had copied the "working papers." This led to the judge's question, "Are we playing with the words, or are you changing your testimony, or what?" As a consequence, the defense asked for a recess, objected to the judge's "tone," and moved for a mistrial. This was denied. Subsequently the military judge refrained from substantial active questioning. While we strongly condemn the foregoing utterance of this military judge, we do not consider it tantamount to an expression of a positive or definite opinion of the guilt of the accused; and it does not raise substantial doubt as to the proceeding's legality, fairness, and impartiality. *See* paras. 62f(10) and (13), Manual, *supra.* A thorough examination of the record and the functioning of this military judge reveals no prejudice to appellant. The judge's conduct, taken as a whole in the context of this trial, leads us to conclude that he did not abandon his impartial role.

We conclude that none of the asserted errors in this case has merit.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.