UNITED STATES, Appellee,

v.

Michael T. WESTMORELAND,
Corporal, U.S. Marine Corps,
Appellant.

No. 63,253.
NMCM 87–2598.

U.S. Court of Military Appeals.

Argued June 12, 1990.

Decided Sept. 25, 1990.

For Appellant: *Lieutenant Mary Ann Razim*, JAGC, USNR (argued); *Captain A.R. Philpott*, JAGC, USN.

For Appellee: *Lieutenant Rosalyn D. Calbert*, JAGC, USNR (argued); *Commander Thomas W. Osborne*, JAGC, USN (on brief).

## Opinion of the Court

EVERETT, Chief Judge:

Contrary to appellant's pleas, a general court-martial composed of officer and enlisted members convicted appellant of conspiracy to commit murder and premeditated murder, in violation of Articles 81 and 118, Uniform Code of Military Justice, 10 USC §§ 881 and 918, respectively. The members sentenced Westmoreland to a dishonorable discharge, confinement for life, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved these results, and the Court of Military Review affirmed in an unpublished opinion.

On appellant's petition, this Court agreed to review whether the military judge erred in instructing the members on a theory of aiding and abetting in connection with the murder specification, and whether the evidence is legally sufficient to sustain appellant's conviction of either offense.[1] Now, after full consideration of these questions, we conclude that appellant's claims are without merit.

## I

### A

This is a sordid case.[2] For $300.00,[3] appellant agreed to kill the wife of a fellow marine, Darrell Morelock, whom he had met nearly 4 years earlier while serving in the same unit. Morelock and his wife Connie had experienced substantial marital difficulties. Westmoreland suggested that Morelock have Connie killed—and that, if the price was right, he would be willing to do the deed. There followed 3 months of cold-blooded planning of Connie's murder among appellant, Morelock, and Morelock's girlfriend, Melissa Bates. The plot culminated in Connie's death after receiving over 30 stab wounds to her hands, arms, legs, back, chest, and neck.

The two specifications on which appellant was arraigned and tried were:

#### Charge I

In that Corporal Michael T. WESTMORELAND ... did ... conspire with Corporal Darryl F. MORELOCK ... and Air Controlman Airman Recruit Melissa Orme BATES ... to commit an offense under the Uniform Code of Military Justice, to wit: the premeditated murder of Connie Harryman MORELOCK, and in order to effect the object of the conspiracy, Corporal WESTMORELAND and Corporal MORELOCK discussed various ways to kill the intended victim and negotiated price and location for the killing ... and then murdered Connie Harryman MORELOCK after Corporals WESTMORELAND and MORELOCK lured [her] to a secluded area ... where Corporal WESTMORELAND did fatally wound [her] by repeatedly stabbing her with a knife.

#### Charge II

In that Corporal Michael T. WESTMORELAND ... did ... with premeditation and for monetary gain, murder Con-

1. Initially, appellant asked our review of the sufficiency of the evidence only as to the murder charge, and we granted review with that limitation. After oral argument, however, we granted appellant's unopposed motion to enlarge that granted issue to include the conspiracy offense, as well.

2. Our recitation throughout this opinion of the facts underlying the allegations is based on the findings of the Court of Military Review from the evidence of record. We acknowledge that, as will be apparent subsequently in the opinion, appellant disputes many of these facts. However, we must accept that court's resolution of factual disputes. Art. 67(d), Uniform Code of Military Justice, 10 USC § 867(d).

3. There was some evidence of "a misunderstanding" as to this price "and that appellant had really wanted $3,000.00." Unpub. op. at 2.

nie Harryman MORELOCK by means of mortal wounds inflicted by a knife.

As the last clause of the conspiracy specification suggests, it was the Government's theory that Morelock had hired Westmoreland to kill Morelock's wife and that, after the two of them had lured her to a remote, wooded area late one night, appellant had, indeed, done just that while Morelock waited nearby.

Overwhelmingly, the prosecution's evidence came from the mouth of Morelock himself. This witness had already been convicted of his wife's murder in a North Carolina State Court and was awaiting sentencing at the time of appellant's trial. He had received some assurances that, if he cooperated in appellant's prosecution, he would not receive a death sentence in his own case. Therefore, chiefly by cross-examination, the defense sought to establish that Morelock was simply trying to find a scapegoat to whom he could transfer the blame for his own crime. Although Westmoreland did not testify himself, the defense claimed that he had not even been at the scene of the fatal stabbing.

As the record of trial makes clear, the case was tried by both the Government and the defense on the theory that either Westmoreland had wielded the knife which killed Connie Morelock or he had done nothing at all. When it came time for the military judge to consider his instructions to the members for their deliberations on findings, he asked the prosecutor several times whether the Government wanted an aider-and-abettor[4] instruction. Each time, trial counsel declined and, in agreement with defense counsel, suggested that it was

an all-or-nothing case. The military judge acquiesced.

During the deliberations, the members returned with a request for reinstruction on the elements of the offenses. At the conclusion of these instructions, the president of the court wrote out two questions for the military judge, the relevant one for our purposes being as follows (app. ex. 112):

> In the murder charge, 118 is it necessary for the accused to be proven the actual murderer or is it sufficient that if he/she were proven part of the conspiracy that he/she could be found guilty of the charge also?

This question precipitated several hours of legal research by and discussion among counsel and the military judge. During the discussion, the judge indicated that he interpreted the question primarily to address the area of vicarious liability of coconspirators.[5] However, he expressed the view that, for this theory of guilt to be available, the prosecution must give clear and early notice of it to an accused, so that he might defend himself effectively. Since trial counsel had not done this, the military judge concluded that during the court members' deliberations was too late in the trial to introduce this theory for the first time.

The judge was more sympathetic to a belated introduction of an aider-and-abettor (principal) theory—which he believed was also encompassed by the court members' inquiry. *See* Art. 77, UCMJ, 10 USC § 877. Indeed, the judge even indicated that he had wondered himself whether an instruc-

---

**4.** As has been made clear, "Article 77, [UCMJ], 10 USC § 877, abolishes the distinction between principals and aiders-and-abettors." *United States v. Vidal,* 23 MJ 319, 325 (CMA), *cert. denied,* 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987).

**5.** Paragraph 7–1*b*, Department of the Army Pamphlet 27–9, *Military Judges' Benchbook* at 7–4 (Change 1, 1985), advises: "Co-conspirators are criminally liable for any substantive offense committed by any member of the conspiracy in furtherance of the conspiracy or as an object of the conspiracy while the accused remained a

member of the conspiracy." This is consistent with "the prevailing rule" that, "[i]f the conspiracy is successful, ... a conspirator may be subject to conviction for both the conspiracy and the completed crime." W. LaFave and A. Scott, *Substantive Criminal Law* § 6.5 at 86 (1986). *See* para. 5c(5), Part IV, Manual for Courts-Martial, United States, 1984. Moreover, "[c]umulative sentences are permissible in most jurisdictions, though this has been criticized when the conspiracy is to do no more than that crime." LaFave, *supra* at 86. *See* para. 5c(8), Manual, *supra.*

tion on this theory of guilt was warranted but that he had been dissuaded from giving one by trial counsel's repeated disavowal of the theory.

Defense counsel strenuously resisted the last-minute resort to this new theory of guilt. Initially, he challenged the evidentiary basis for an aider-and-abettor instruction, since the prosecution had contended throughout the trial that Westmoreland himself had perpetrated the killing. Indeed, defense counsel pointed out that Morelock, the pivotal witness for the prosecution, had unequivocally testified that appellant had killed Connie while Morelock himself had waited nearby.

Trial counsel responded that the members were not bound to either believe or disbelieve Morelock's testimony in its entirety. Instead, they were free, if they so chose, to believe it only up to the point where the witness had described the stabbing and to reject his account from that point on. Trial counsel urged that, if the court members believed Morelock himself had killed his wife—as the question by the court members might imply—then an aider-and abettor instruction would be based on the evidence and, therefore, was appropriate.

Next, defense counsel argued that the prosecution was bound at that late stage of the trial by its chosen theory that Westmoreland had wielded the knife; and he claimed that, had the defense been apprised of possible alternative approaches to liability, it would have directed its trial efforts quite differently.

In response, the military judge reflected some sympathy for the defense position. At the same time, he pointed out that it ultimately was his responsibility to ensure that the members were fully and correctly instructed on any matter reasonably raised by the evidence, regardless of the parties' wishes. He asserted that initially he had been guided by the prosecutor's preferences—although admittedly he had been perplexed by them, since he had considered that an aider-and-abettor instruction would benefit the Government. Because the court members' question implied that they were probing this area, the instruction now seemed necessary.

Even so, the military judge acknowledged the special problems that defense counsel had raised. He offered to permit the defense to reopen its case, present new argument to the members, or both. After a continuance of several days, defense counsel declined these opportunities—expressing the belief that such remedies would be ineffective so late in the trial.

At last, after much discussion and some vacillating on whether to give the instruction at all and, if so, whether it applied to both charges or only to the murder specification, the military judge finally decided to give an aider-and-abettor instruction but to do so only as to the murder charge and not the conspiracy. Thereafter, the military judge gave a lengthy instruction to the members that explained aiding and abetting in some detail and advised how it might fit this case.

Subsequently, the members renewed their deliberations and returned 2 and a half hours later with findings. On the conspiracy specification, Westmoreland was found guilty as charged. As to the murder specification, the finding was in this language:

Of the specification of the Charge Number II: Guilty, except of the words, "murder Connie MARRYMAN [sic] MORELOCK by means of mortal wounds inflicted by a knife," substituting therefor respectively the words, "aid and abet Corporal Darrell F. MORELOCK in the murder of Connie HARRYMAN MORELOCK whose death resulted from mortal wounds inflicted by a knife"; of the excepted words, not guilty; of the substituted words, guilty; of the specification to the Charge Number II as excepted and substituted, guilty; of the Charge II: Guilty.

B

The military judge's independent duty to determine and deliver appropriate instruc-

tions cannot seriously be challenged. In language that is forceful in its clarity in this regard, this Court stated in *United States v. Graves*, 1 MJ 50, 53 (CMA 1975):

> Irrespective of the desires of counsel, the military judge must bear the primary responsibility for assuring that the jury properly is instructed on the elements of the offenses raised by the evidence as well as potential defenses and other questions of law. Simply stated, counsel do not frame issues for the jury; that is the duty of the military judge based upon his evaluation of the testimony related by the witnesses during the trial.

Most often, it is clear whether a lesser-included offense or an affirmative defense or some theory or question of law has been raised by the evidence. Occasionally, though, it may not be at all clear; occasionally, the members may take an unanticipated view of or approach to the evidence that may raise issues that the military judge cannot reasonably be charged with foreseeing. This is such a case.

A fair reading of the evidence makes clear that, from the viewpoint of both the Government and the defense, the issues to be tried were whether Westmoreland conspired with Morelock and Bates to kill Morelock's wife and whether he carried out the plot by committing the ultimate deed. Morelock's testimony and other supporting evidence indicated affirmative answers to these issues. Contrariwise, appellant claimed that he had nothing whatsoever to do with the homicide. At no time did either side suggest the possibility that the conspiracy had existed but that—whether pursuant to this conspiracy or otherwise—Morelock himself had killed Connie.

Given this state of the evidence, the military judge properly omitted to give an aider-and-abettor instruction prior to the deliberations. Indeed, such an instruction at

that point might well have served only to have confused the members.

■ The question raised by the members during their deliberations, however, cast a new light on that evidence. The military judge inferred from the question that the members might have some doubt whether Westmoreland himself had done the killing, as Morelock had testified, and that they were seeking guidance on whether appellant, nonetheless, would be guilty of murder. In other words, as trial counsel argued, the members' question could be read to imply that they believed Morelock's version up to the point of the ultimate act but had some doubt about his testimony that appellant, and not he, had stabbed the victim.

Of course, the members were entirely free to view the evidence in this way. Even in the absence of any direct evidence to this effect, the members in their deliberations could properly have concluded that Morelock had unduly minimized his own part in the final act of the conspiracy and that he—rather than appellant—had inflicted the stab wounds on his wife.

■ Although the question by the court members seemed to address appellant's vicarious liability for participating in a conspiracy, rather than aiding and abetting a crime, the two concepts are closely related.[6] Thus, the military judge was confronted with a situation in which the court members had indicated that they might be viewing the evidence in a manner that was unexpected but that was rational and within their province. With this rather unusual development, it not only was within the judge's proper discretion, but also was his *sua sponte* responsibility, to provide the members with appropriate guidance. *See United States v. Graves, supra.* We repeat what was said in *United States v. Jackson*, 6 MJ 261, 263 n. 5 (CMA 1979):

6. For a comparison between complicity (as a principal) and conspiracy, as well as an excellent analysis of the legal questions and potential problems lurking in both theories, *see* LaFave, *supra* at § 6.8 at 153–66. Practitioners should

> carefully consider this sensitive treatment of accomplice and co-conspirator liability before drafting charges or formulating instructions under paragraph 7–1 of DA Pam. 27–9, *supra.*

The Court again emphasizes to all participants in the trial that it is absolutely essential that *all* factual issues and offenses raised at all in the evidence be the subject of instructions—requested or not—by the trial judge. This is demanded not out of an abundance of caution, but from the desire that the fact-finding function be exercised to the fullest by the jury—the essence of a fair trial.

(Emphasis added.)

The judge chose not to allow the court members to convict appellant of Connie's murder if they found that he had entered a conspiracy to that end and someone else had killed her pursuant to the conspiracy. To that extent, he protected appellant—perhaps more than was required. However, the military judge's instructions did properly permit the members to convict Westmoreland of premeditated murder if they found that he had aided and abetted Morelock in the homicide.

### C

■ The language of the murder specification on which appellant was tried was sufficient to encompass a killing performed solely by Westmoreland; a killing which he had aided and abetted; or a killing pursuant to a conspiracy of which he had been a member. Moreover, a finding of guilty could have been rendered in the words of this specification and without exceptions and substitutions—whether the factfinder determined that Westmoreland perpetrated the murder; aided and abetted it; or conspired to accomplish it.

The defense, however, contends that at some point before findings the prosecution must elect among the theories of criminal liability; that, thereafter, the military judge may only instruct the court members as to the theory that the Government has elected; and that the accused may not be found guilty unless two-thirds of the court members agree on this theory of guilt.

Rejecting a similar contention in *United States v. Vidal*, 23 MJ 319 (CMA), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987), we stated:

Appellant was charged with raping Andrea Blum; but the allegations do not indicate whether he was the perpetrator or only an aider and abettor to Hunt's actions. However, the standard-form specification of rape was sufficient to charge either theory; and even though the Government may initially proceed on one theory, it is entitled to utilize the alternative theory of guilt before the members. *See, e.g., United States v. Brooks*, 22 MJ 441, 444 (CMA 1986)....

Under such circumstances, it has not heretofore been required that two-thirds of the members agree as to the particular theory of liability. *Cf. United States v. Lomax*, 12 MJ 1001, 1004–05 (ACMR), *pet. denied*, 13 MJ 467 (1982); *United States v. Clements*, 12 MJ 842, 845 (ACMR), *pet. denied*, 13 MJ 232 (1982). And we do not believe now that such a requirement need be imposed in order to fulfill the statutory mandate that two-thirds of the court-martial members must concur in a finding of guilty. Art. 52(a)(2), UCMJ, 10 USC § 852(a)(2). *Cf. United States v. Barton*, 731 F.2d 669 (10th Cir.1984). If one-third of the members are satisfied that the accused personally fired the shot and another third find that he aided someone else in doing so, he can properly be convicted of murder, because two-thirds of the court members are convinced beyond a reasonable doubt that the accused, on one theory or another, committed murder at the particular time and place....

23 MJ at 324.

In light of *Vidal*, we conclude that, here, the military judge could properly instruct the members that Westmoreland was guilty of the murder of Connie Morelock whether he stabbed her or aided and abetted her husband when he stabbed her. Moreover, a court member could properly vote to convict on either theory—or even if he was unsure which of the two men wielded the knife but was convinced beyond a reasonable doubt that Westmoreland did so himself or else aided Morelock to do so.

From the outset, the language of the murder specification placed the defense on notice of the alternative theories of guilt available to the Government in its prosecution. When the military judge decided to instruct only on the theory that appellant had killed the victim—as the testimony seemed to indicate—appellant did not acquire a vested right to have his guilt determined only on this basis.

In view of the theory on which the case had been tried up to that point and the evidence and arguments that had been presented, the military judge, after deciding to give an aiding-and-abetting instruction, quite appropriately offered defense counsel the opportunity to reopen his case, present additional argument, or both. Had this offer not been made, the defense would have had a more plausible argument that it was prejudiced. However, having given the defense this opportunity, the military judge was free to instruct on aiding and abetting when the defense declined his offer.

## II

### A

■■■ Appellant claims that the evidence against him was insufficient to support the findings. To some extent, his argument on this issue parallels his attack on the instruction on aiding and abetting. In this connection, the defense points out that, in its findings on the murder specification, the court members made exceptions and substitutions whereunder appellant's guilt was predicated on aiding and abetting. However, it further notes that the record contains no evidence of aiding and abetting; and on the conspiracy specification the court members found that Westmoreland had stabbed Connie Morelock with a knife.

The specific finding by the court members that appellant had aided and abetted Morelock in the murder was gratuitous. The members could properly have returned a finding of guilty without exceptions and substitutions, even if they were convinced that appellant had only been an aider and abettor, and had not done the stabbing himself. In our view, the insertion of the aiding-and-abetting language does not affect the sufficiency of the evidence or of the finding of guilty. If the evidence was adequate to establish beyond a reasonable doubt that Westmoreland and Morelock had driven Connie to a deserted place where one or the other of them—or perhaps both—stabbed her to death, then it was legally sufficient. *See United States v. Harper*, 22 MJ 157, 161 (CMA 1986).

Viewing the events in context, we are not disturbed by the finding on the conspiracy specification that "Westmoreland ... fatally wound[ed] Connie ... by repeatedly stabbing her with a knife." In the first place, this is merely one of several overt acts alleged in connection with the conspiracy; and if it were stricken, the legal effect of a conviction on the remaining allegations in the conspiracy specification would be the same. Secondly, the military judge did not instruct the court members that they could use an aiding-and-abetting theory in connection with their findings on the conspiracy specification. Finally, we conclude in any event that any inconsistency between the conspiracy findings and the findings on the murder specification was not prejudicial.

### B

■■ Appellant also complains that he was linked to these crimes by the testimony of Morelock alone; that the testimony of Morelock was "self-contradictory, uncertain, or improbable"; and that the uncorroborated testimony of his alleged accomplice is legally insufficient to sustain the findings.

Judge Albertson, writing for the court below, noted that the prohibition against a conviction that is based on "uncorroborated" accomplice testimony which is "self-contradictory, uncertain, or improbable," contained in paragraph 74a (2), Manual for Courts–Martial, United States, 1969 (Revised edition), which governs this case, has not been expressly adopted in Manual

for Courts–Martial, United States, 1984. *See* Discussion, RCM 918(c), 1984 Manual, *supra*.[7]

However, we need not discuss the effects of this omission. Assuming that Morelock's testimony was "self-contradictory, uncertain, or improbable" and, thus, needed corroboration in order to sustain appellant's conviction, *see* para. 7–10, Department of the Army Pamphlet 27–9, *Military Judges' Benchbook* at 7–15 (May 1982), his trial testimony as to appellant's involvement in the conspiracy and in the murder

itself was adequately corroborated by testimony of other witnesses and by documentary evidence. Accordingly, the evidence is legally sufficient to sustain both findings of guilty.

### III

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.

7. Judge Albertson also noted that a division has existed among the Courts of Military Review as to whether an accomplice's testimony at trial—which otherwise would not be "self-contradictory, uncertain, or improbable"—is rendered so because the witness admits that he has made prior inconsistent statements. Unpub. op. at 10.