UNITED STATES

v.

Timothy M. SCHEMBER, 375 92 2712,
Private First Class (E–2), U.S.
Marine Corps.

NMCM 98 00197.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 20 Aug. 1997.

Decided 9 April 1999.

LT John D. Holden, JAGC, USNR, Appellate Defense Counsel.

LT James E. Grimes, JAGC, USNR, Appellate Government Counsel.

Before SEFTON, Chief Judge, TROIDL and ROLPH, Appellate Military Judges.

TROIDL, Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of conspiracy to commit burglary and assault, maiming, and burglary, in violation of Articles 81, 124, and 129, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 924, and 929 (1994). The approved sentence includes a bad-conduct discharge, 24 months confinement, total forfeitures and reduction to the lowest enlisted pay grade. In taking his action in this case, the convening authority approved the sentence as adjudged, but suspended all confinement in excess of 13 months and 15 days.[1]

We have carefully reviewed the record of trial, the appellant's assignments of error, and the Government's response. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## Background

On or about 27 January 1997, a female Marine told PFC Castaldo that she had been sexually assaulted the previous evening by PFC Hughes, that she had reported the assault to the chain of command, and that nothing was going to be done. At approximately 2100 on 30 January 1997, PFC Castaldo shared this information with the appellant, PFC Alexander, PFC Spence and PFC Edinger. These individuals agreed that PFC Hughes needed to be held accountable and a plan emerged to enter the trailer in which PFC Hughes resided and assault him.

PFC and Mrs. Edinger resided in the trailer with PFC Hughes and they shared the rent and utilities. Although PFC Edinger declined to participate in the assault on PFC Hughes, he consented to the group's entry into the trailer and facilitated their work by describing the general layout of the trailer and telling them about a faulty lock on the front door. PFC Edinger asked, however, that the group gain his wife's consent prior to entering the trailer. PFC Alexander withdrew from the conspiracy before the appellant, PFC Spence and PFC Castaldo drove to the trailer. Once in the vicinity of the trailer, the appellant called Mrs. Edinger, told her of the plan, gained her concurrence, and she then left the trailer before the three Marines entered and assaulted PFC Hughes in front of Mrs. Hughes and the couple's two-year-old daughter. PFC Spence assaulted PFC Hughes with the handle portion of a pool cue; the appellant used his fists.

## Improvident Plea to Burglary and Conspiracy to Commit Burglary and Assault

In his first and third assignments of error, the appellant contends that the military judge erred in accepting his plea of guilty to the burglary and conspiracy to commit both burglary and assault charges. The basis for his position is that since PFC and Mrs. Edinger, who lived in the same dwelling with PFC Hughes, consented to the appellant's entry into the trailer that night the entry was not unlawful because it was done with

---

1. Under the terms of a pretrial agreement, the convening authority was required to suspend all confinement in excess of 15 months.

the consent of the trailer's resident.[2] We disagree.

A military judge may not accept a guilty plea to an offense without inquiring into its factual basis. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969); UCMJ, Article 45(a); RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). Acceptance of a guilty plea requires the accused to substantiate the facts that objectively support his plea. *United States v. Schwabauer*, 37 M.J. 338, 341 (C.M.A.1993); R.C.M. 910(e), Discussion.

A military judge may not "arbitrarily reject a guilty plea." *United States v. Penister*, 25 M.J. 148, 152 (C.M.A.1987). The standard of review to determine whether a plea is provident is whether the record reveals a substantial basis in law and fact for questioning the plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991).

We find that the military judge accurately listed the elements and defined the terms contained in the elements of the offenses of burglary and conspiracy to which the appellant plead guilty. We also find that the appellant indicated an understanding of the elements of the offenses and the legal definitions and stated they correctly described the offenses. Finally, we find that when PFC Edinger and his wife both assented to and facilitated the entry into the trailer for the purpose of assaulting PFC Hughes, they became the appellant's confederates and

a constructive breaking occurred. "There is a constructive breaking when the entry is gained . . . through collusion with a confederate, an occupant of the house . . . ." MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), Part IV, ¶ 55c(2); *see*, 58 A.L.R. 4th *Burglary–Entry with Consent* § 14 (1987) and 13 AM.JUR. 2d *Burglary* § 13 (1964). Accordingly, we find that there was an adequate factual basis for the appellant's pleas to the burglary and conspiracy offenses and that there is no substantial basis in law or fact for questioning the appellant's pleas. The assigned errors are without merit.

### Military Judge Denied the Appellant's Right to a Fair Trial

In his second assignment of error the appellant avers that he was denied his right to a fair trial because the military judge abandoned his role as a neutral and detached magistrate. The appellant points to three examples in support of his position. The first occurred during the providence inquiry when the military judge cautioned the appellant about minimizing his culpability in responding to questions.[3] The second was during the case in sentencing, when the military judge directed the defense counsel to start asking relevant questions of the appellant's father during direct examination.[4] The final example occurred when the military judge questioned the appellant following his sworn statement during sentencing and asked the appellant why he took the law into his own hands if he believed in the legal system.[5]

---

2. As to the burglary, the appellant contends the consent meant that he did not "unlawfully" break and enter into the dwelling of another. As to the conspiracy, the appellant asserts the consent meant that he did not form the intent to commit burglary and that there was no overt act of breaking and entering. Appellant's Brief of 1 December 1998 at 3, 9.

3. MJ: Once again, we're minimizing here, Champ.
   ACC: Yes, sir.
   MJ: Okay? Minimizing is real good for mommy and daddy but not for me. Listen to the question I had for you.
   Record at 34.

4. MJ: Counsel, I love this, you know, witty repartee between the two of you, but let's get to something that's relevant.

Record at 68.

5. MJ: PFC Schember, you say that you always wanted to become a lawyer and help people through the legal system; is that right?
   ACC: Yes, sir.
   MJ: You must believe in the legal system, then; correct?
   ACC: Yes, sir, I do.
   MJ: Did you believe in the tenets of American jurisprudence that says a man is innocent until proven guilty?
   ACC: Yes, sir.
   MJ: And yet, you took it upon yourself, along with these two other individuals to play Charles Bronson and become a vigilante on the night of the 30th of January, 1997, and attack another individual, did you not?

The appellant did not object to the military judge's comments, questions, or conduct at trial or during the convening authority's post-trial review process.

> Public confidence in the integrity and impartiality of a judge is sustained in large part by the conduct of a judge during the proceeding. *See* Canon 2A, ABA Code of Judicial Conduct. In the military, a judge may not abandon his role as an impartial party and assist in the conviction of a specific accused. *United States v. Lindsay,* 12 U.S.C.M.A. 235, 30 C.M.R. 235, 1961 WL 4430 (1961).

*United States v. Reynolds,* 24 M.J. 261, 264 (C.M.A.1987).

> [A] military judge is not "a mere referee" but, rather, properly may participate actively in the proceedings. *See United States v. Graves,* 1 M.J. 50, 53 (C.M.A.1975). Thus, while a military judge must maintain his fulcrum position of impartiality, the judge can and sometimes must ask questions in order to clear up uncertainties in the evidence or to develop the facts further. *See United States v. Dock, supra,* 40 M.J. 112; *United States v. Tolppa,* 25 M.J. 352 (C.M.A.1987); *United States v. Reynolds,* 24 M.J. 261 (C.M.A.1987). The legal test that flows from all this is whether, "taken as a whole in the context of this trial," a court-martial's "legality, fairness, and impartiality" were put into doubt by the military judge's questions. *United States v. Reynolds,* supra at 265. This test is applied from the viewpoint of the reasonable person. S. Childress & M. Davis, 2 Federal Standards of Review § 12.05 at 12–38 (2d ed.1992).

*United States v. Ramos,* 42 M.J. 392, 396 (1995).

ACC: Yes, sir.
MJ: Well, what turned your belief in the legal system around?
ACC: It's a . . .
MJ: That made you think you had to take the law into your own hnds (sic)?
ACC: Its apparent unwillingness to do anything, sir.

■ Having carefully reviewed the entire record, we find that the military judge's comments and questions, considered from the viewpoint of a reasonable person in the context of the whole trial, would not cause that person to doubt the legality, fairness, and impartiality of the appellant's trial. We find absolutely no evidence that the military judge in this case abandoned his role as an impartial party. Accordingly, the assignment is without merit.

### Sentence Severity

■ In his final assignment of error, the appellant asserts that his sentence was inappropriately severe since he "committed the assault as an act of retribution against a Marine who had allegedly sexually assaulted a female classmate of appellant's and appellant's mother and aunt had both been raped." Appellant's Brief of 1 Dec 1998 at 10. We disagree and find that the sentence is appropriate in all respects for these offenses and this offender.

The offenses of which the appellant stands convicted are serious, authorizing 27 years confinement and a dishonorable discharge, in addition to total forfeitures and reduction to pay grade E–1. Although the appellant may consider that his motives were purer than other individuals who commit like crimes, his rush to convict, sentence and provide immediate corporal punishment to PFC Hughes based upon second-hand gossip is neither laudable nor condonable. It is clear to us from the length of confinement and type of discharge adjudged, which punishments are well below both the authorized maximum and the sentence argued for by the Government,[6] that the military judge carefully considered the nature and seriousness of the offenses and the record and potential of the offender in determining an appropriate sentence. Granting sentence relief on these facts would be to engage in clemency, which is within the

Record at 85.

6. Trial counsel argued for a dishonorable discharge, 36 months confinement, total forfeitures and reduction to pay grade E–1. Record at 88.

sole purview of the convening authority and was in fact granted by the convening authority in his action. *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A.1988). The assignment of error is without merit.

## Conclusion

Accordingly, we affirm the findings of guilty and sentence as approved below.

Chief Judge SEFTON and Judge ROLPH concur.

