# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman First Class JOEL P. SMITH
## United States Air Force

## ACM S32121

## 19 May 2014

Sentence adjudged 6 December 2012 by SPCM convened at Davis-Monthan Air Force Base, Arizona. Military Judge: Christopher M. Schumann (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 10 months, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Christopher D. James.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Major Daniel J. Breen; Major John M. Simms; and Gerald R. Bruce, Esquire.

Before

MARKSTEINER, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

WEBER, Judge:

A military judge sitting as a special court-martial convicted the appellant, in accordance with his pleas, of two specifications of wrongfully using heroin on divers occasions and one specification of wrongfully distributing heroin on divers occasions, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 10 months, and reduction to E-1.

The appellant argues that he is entitled to a new action because the personal data sheet submitted to the convening authority misleadingly implied the appellant had received two nonjudicial punishment actions instead of one. He also alleges that the military judge abandoned his impartial role by helping trial counsel lay the foundation for a prosecution exhibit in sentencing. We find no merit in the appellant's allegations and affirm.

*Background*

The appellant received nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815, in June 2012 for wrongfully using Spice. The Government then initiated administrative discharge proceedings against him for his drug use. During the administrative discharge process, the appellant purchased heroin and repeatedly used it with a fellow airman on base. The appellant's misconduct came to light when another airman witnessed the heroin use and reported it. Three successive urinalysis tests then revealed the presence of heroin metabolites in the appellant's system. The airman with whom the appellant used heroin also confessed to the misconduct.

After the third positive urinalysis, the appellant was admitted to an inpatient drug treatment center, where he remained for approximately a month. Shortly after he returned from treatment, an Air Force drug treatment caseworker noted the appellant was behaving suspiciously and ordered a toxicology screen to determine if the appellant was remaining free of drug use, as required by the terms of the drug treatment program. While the results of that test were pending, the appellant admitted to his caseworker that he had "relapsed" and had used heroin twice in recent days.

Further relevant facts are laid out below.

*Personal Data Sheet*

The personal data sheet that accompanied the staff judge advocate's recommendation (SJAR) included the following information: "NO. OF PREVIOUS ARTICLE 15 ACTIONS: 1, 7 June 2012." Neither the appellant nor trial defense counsel alleged this was error or misleading when presenting clemency submissions to the convening authority. However, the appellant now alleges that this representation misled the convening authority by implying the appellant had received two nonjudicial punishment actions: one on 1 June 2012 and a second on 7 June 2012.

Whether post-trial processing has been properly completed is a question of law we review de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). However, failure to comment on an error in the SJAR waives a later claim of error in the absence of plain error. Rule for Courts-Martial (R.C.M.) 1106(f)(6).

Before the convening authority takes action, he may consider personnel records of the accused. R.C.M. 1107(b)(3)(B)(ii). The SJAR "plays a vital role in providing the convening authority with complete and accurate advice in the exercise of command discretion." *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). For this reason, it is particularly important that the recommendation and supporting documents be accurate. *Id.*

We find no error – plain or otherwise – in the personal data sheet accompanying the SJAR. The category on the data sheet clearly calls for the "number" of nonjudicial punishment actions the appellant had received. It then lists that number as "1" followed by the date of that action. We therefore find no inaccuracy or ambiguity in the information provided to the convening authority, and we decline to accept the appellant's invitation to read the data sheet in such a strained and untenable manner.

*Military Judge's Questioning of Government Witness*

The appellant also alleges the military judge abandoned his neutral role by helping trial counsel lay the foundation for the first of four drug testing reports (DTRs) the prosecution sought to introduce into evidence. When trial defense counsel objected to the introduction of the DTRs on foundational grounds, the appellant asserts the military judge "took over as lead counsel for the United States and laid the foundation for documents which could not otherwise come in." We disagree.

"An accused has a constitutional right to an impartial judge." *United States v. Wright*, 52 M.J. 136, 140 (C.A.A.F. 1999) (citing *Ward v. Village of Monroeville*, 409 U.S. 57 (1972); *Turney v. Ohio*, 273 U.S. 510 (1927)). A military judge is charged to "avoid undue interference with the parties' presentations or the appearance of partiality." R.C.M. 801(a)(3), Discussion. "In the military, a judge may not abandon his role as an impartial party and assist in the conviction of a specified accused." *United States v. Reynolds*, 24 M.J. 261, 264 (C.M.A. 1987) (citing *United States v. Lindsay*, 30 C.M.R. 235 (C.M.A. 1961)). A military judge is entitled to a "strong presumption" of impartiality, particularly when the actions at issue took place in conjunction with judicial proceedings. *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001). "'When a military judge's impartiality is challenged on appeal, the test is whether, taken as a whole in the context of [the] trial, a court-martial's legality, fairness, and impartiality were put into doubt' by the military judge's actions." *Id.* at 78 (quoting *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000)).

We find no concern in the military judge's actions, and we do not agree with the appellant's characterization of the military judge's actions. Prior to entrance of pleas, the defense moved to suppress any testimony by the Government's expert witness that relied on results of the urinalysis tests. The defense also moved to suppress introduction of the

actual DTRs into evidence, arguing that their admission would violate the appellant's rights under the Confrontation Clause of the Sixth Amendment.[*] After the Government redacted the DTRs, the military judge heard witness testimony and argument and subsequently denied the defense's motion. The appellant does not challenge that ruling.

Following the appellant's guilty plea, the Government introduced in sentencing the first of the four DTRs at issue through the expert's testimony. After the expert testified about the DTR, trial counsel moved to admit the document. Trial defense counsel objected on relevance grounds, contending that the Government had not tied the sample that was tested to the appellant. The military judge agreed and advised trial counsel he needed to do more to demonstrate the connection between the sample reflected in the DTR and the sample provided by the appellant. Trial counsel asked the expert several more questions and re-moved to admit the exhibit. Trial defense counsel responded, "No further objections." Instead of admitting the exhibit immediately, the military judge asked the expert two follow-up questions: the first asked him to identify the "LAN number" that connected the DTR to the appellant, and the second asked the expert to clarify how he knew that LAN number belonged to the appellant. The military judge again asked trial defense counsel if he had any objections to the admission of the DTR, and trial defense counsel stated he had none, apart from the initial motion filed on this issue.

The military judge did not "take over as lead counsel for the United States" and lay the foundation for the DTR. Trial counsel had already laid the foundation for admission of the document to the satisfaction of trial defense counsel. The military judge then merely asked two clarifying questions that helped him understand the expert's testimony and evaluate the evidence. A military judge "can and sometimes must ask questions in order to clear up uncertainties in the evidence or to develop facts further." *United States v. Ramos*, 42 M.J. 392, 396 (C.A.A.F. 1995). The military judge did nothing improper in briefly questioning the witness, and the allegation that he went so far as to abandon his role as an impartial party is without merit.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

---

[*] U.S. CONST. amend. VI.

Accordingly, the approved findings and sentence are

AFFIRMED.

 FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM S32121