UNITED STATES, Appellee

v.

William C. HORNE, Specialist
U.S. Army, Appellant.

No. 95–0125.
Crim.App. No. 9301068.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 1, 1995.

Decided July 30, 1996.

For Appellant: *Captain Michael E. Hatch* (argued); *Colonel Stephen D. Smith, Lieutenant Colonel John T. Rucker, Major Michael A. Egan* (on brief); *Captain Charles A. Wynder, Jr.*

For Appellee: *Captain Chris A. Wendelbo* (argued); *Colonel John M. Smith, Lieutenant Colonel James L. Pohl, Captain Anthony P. Nicastro, Captain Eugene E. Baime* (on brief).

PER CURIAM:

Appellant was convicted of the unpremeditated murder of his wife, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918. His sentence of dishonorable discharge, confinement for 8 years, total forfeitures, and reduction to Private (E–1) was approved by the convening authority. His conviction and sentence were affirmed in an unpublished opinion by the Court of Criminal Appeals on October 11, 1994. We granted review to consider the following issues raised by appellate defense counsel:

I

WHETHER THE MILITARY JUDGE ERRED BY DENYING A CHALLENGE FOR CAUSE MADE AGAINST HIM BY DEFENSE COUNSEL WHERE HIS ACTIONS AS MILITARY JUDGE IN BOTH THIS CASE AND A PAST CASE CLEARLY CREATED AT LEAST THE APPEARANCE OF IMPROPRIETY.

## II

WHETHER APPELLANT'S FIFTH AMENDMENT RIGHT TO DUE PROCESS WAS VIOLATED WHEN THE MILITARY JUDGE AND THE DEFENSE COUNSEL BECAME ENGAGED IN A PERSONAL STRUGGLE FOR CONTROL OF THE COURT–MARTIAL PROCESS, THEREBY OVERWHELMING IT.

■ Upon further review of the granted issues, the briefs of the parties, and the record of trial, we agree with the court below that the military judge did not entertain a pervasive bias against the defense counsel that made fair judgment for the appellant impossible; moreover, we are equally satisfied that the military judge did not abandon judicial impartiality or create the objective appearance thereof. *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *United States v. Reynolds,* 24 MJ 261, 264 (CMA 1987). Unpub. op. at 4–5.

■ In *United States v. Loving,* 41 MJ 213, 264 (1994), *aff'd on other grounds,* —— U.S. ——, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996), we applied the test for bias or prejudice announced in *Liteky* to "expressions of impatience, dissatisfaction, annoyance, and even anger." We are satisfied that the Court of Criminal Appeals applied the correct standard of review to the facts of this case.

■ We likewise conclude that appellant was not denied due process of law. In order that the bench and bar have a full illumination of the facts of the case, we hereby publish the memorandum opinion below as an Appendix to this opinion.

The decision of the United States Army Court of Criminal Appeals is affirmed.

UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CUTHBERT, LANE, and RUSSELL
Appellate Military Judges

| | | |
|---|---|---|
| UNITED STATES, Appellee | ) | ACMR 9301068 |
| | ) | |
| v. | ) | 1st Cavalry Division |
| | ) | |
| Specialist WILLIAM C. HORNE, | ) | |
| 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, | ) | H. J. Green, |
| United States Army, Appellant | ) | Military Judge |

For Appellant: Captain Alison L. Becker, JAGC (argued); Major
Michael A. Egan, JAGC (on brief).

For Appellee: Captain J. Key Schoen, JAGC (argued); Colonel
Dayton M. Cramer, JAGC, Lieutenant Colonel James L. Pohl, JAGC,
Captain Joel B. Miller, JAGC (on brief); Captain Anthony P.
Nicastro, JAGC.

11 October 1994

--------------------

MEMORANDUM OPINION

--------------------

RUSSELL, Judge:

A general court-martial composed of officer and enlisted
members convicted the appellant, contrary to his pleas, of murder
in violation of Article 118, Uniform Code of Military Justice, 10
U.S.C. § 918 (1988)[hereinafter UCMJ]. The convening authority
approved the adjudged sentence to a dishonorable discharge,
confinement for eight years, forfeiture of all pay and
allowances, and reduction to Private E1.

This case is before the court for initial review pursuant to
Article 66, UCMJ. We have examined the record of trial, the
assignments of error, the assertions of error raised personally
by the appellant pursuant to United States v. Grostefon, 12 M.J.
431 (C.M.A. 1982), and the government's reply. We have concluded
that the findings and sentence are correct in law and fact and
that no error materially prejudiced the substantial rights of the
appellant. UCMJ article 59(a). The issues raised in the
assignments of error concerning the conduct of the military
judge, however, merit further discussion.

HORNE - ACMR 9301068

Paramedics called by the appellant to his quarters on Fort Hood found his wife lying in their bed near death from a single gunshot wound to her right temple. Lying on the floor near the foot of the bed was a six-shot revolver containing five live rounds and one spent cartridge. Gunpowder stippling around the point of entry indicated that the pistol was between one to three feet from the victim when discharged. When asked by police what had happened, the appellant explained that he and his wife had been playing with the loaded pistol and that it had gone off accidentally. In a written statement, the appellant said, "I had the gun in my right hand and turned toward her and pointed it at her and at the same time I cocked the gun. The next thing I heard was the gun going off."

At trial, the appellant elaborated on his claim that the shooting was accidental. Evidence was introduced showing that he was by nature easily startled, and that there had been another loud noise like a gunshot that occurred just as he was trying to uncock the pistol. He explained that his pistol had discharged involuntarily when he was startled by the sound of the other coincidental gunshot. Thus, the defense theorized, because the appellant was involved in the lawful activity of eliminating an unsafe condition by uncocking a loaded pistol when the startling event occurred, the resultant death was accidental.

Development of the defense theory was hampered by the fact that the appellant's written statement to police did not mention another gunshot or its startling effect as the possible cause of the discharge of the gun. Moreover, though police investigators admitted that they were informed of the other gunshot, they did not admit that the appellant had ever mentioned the gunshot or its startling effect on him. Thus, in order to establish the veracity of the appellant's testimony, the defense counsel attempted to explain the appellant's incomplete written statement by showing that it was the product of police investigators who had prejudged the case and had carelessly or deliberately ignored critical exculpatory facts in order to "make a case" against the appellant.

Unfortunately, the trial of this case was somewhat marred by tension between the defense counsel and the military judge which became more personal as the trial wore on. In a prior case involving the same judge and defense counsel, the defense counsel submitted post-trial written matters to the convening authority in which he indulged in some very strident criticism of the

military judge.[1]  Calmer heads prevailed and the defense counsel withdrew the offending language and substituted a more appropriate pleading, but not before the stinging words became known to the military judge and others at high levels of the legal services bureaucracy.

With this background in mind, we note that the military judge was very active in controlling the administration of this trial.  He made over fifty sua sponte objections to defense conduct, sometimes implying in front of the members that the defense counsel did not know exactly what he was doing.[2]  Moreover, as a general matter, the military judge's curt, plain language sometimes seemed demeaning and oftentimes was not as

---

[1]At the end of two single-spaced pages dedicated to elaborating on his many allegations that the military judge had blatantly abused his discretion, the trial defense counsel summed up by writing the following: "Perhaps . . . Judge Green should retire and seek new work. . . . Judge Green, in the opinion of the defense, has lost the ability to be fair.  Soldier's (sic), their units, and the Army will suffer if his conduct continues.  Send a message to abusive judges and disapprove the sentence in this case."

[2]For example, the military judge insisted that the defense counsel explain the relevance and theory of admissibility for the facts that a report of a second gunshot had been received by police and that the police had downplayed its implications and had not followed up on it.  The defense counsel explained that the evidence was not hearsay as it was not offered for the truth of the matter asserted, but only to impeach the investigation and to show bias on the part of the police.  In this case the defense clearly needed to show police bias in order to help explain the inconsistent absence of any mention of the other gunshot in the appellant's written statement.  It was not trying to establish that a second gunshot was fired, but only that a report of such was made and ignored.

The judge was technically correct in insisting that counsel clearly articulate a theory of admissibility.  However, inasmuch as it seems fairly obvious that the defense was conducting a legitimate line of questioning within the constraints of the hearsay rule, the judge's sua sponte interruption seemed more focused on simply putting counsel through his 'paces,' as opposed to a truly necessary intervention to stave off plain error.

■

courteous as the aspirations for judicial conduct envision.[3]  In response to the defense's renewal of its request for a mistrial, he pointedly criticized the handling of important aspects of the defense case; albeit after findings and sentencing, this somewhat intemperate criticism took place on the record in front of the appellant.  Finally, soon after the conclusion of the trial, the military judge filed a formal professional responsibility complaint against the trial defense counsel regarding his handling of potential evidence in the case.  The complaint, though colorable, was considered by officials of the Office of The Judge Advocate General who determined that no violation occurred.  It is clear from the record that the military judge did not hold the defense counsel in high esteem, and vice versa.

On the other hand, defense appellate counsel cannot point to, and we are unable to find, a single instance where the military judge's active enforcement of the rules of procedure or evidence specifically prejudiced the appellant.  The military judge allowed the full development of the complete defense of accident and issued appropriate instructions to ensure that the possibility of accident was fully considered by the court-martial panel.  The defense counsel developed a coherent theory in the face of overwhelming evidence and zealously pounded his theory past the judge's relentless enforcement of courtroom etiquette and the Military Rules of Evidence.  The members eventually heard all of the defense evidence and considered whether the appellant should be excused from the murder of his wife because he was startled after cocking a loaded pistol and pointing it toward her head at close range.  They apparently rejected the defense of accident in the face of the appellant's inherently dangerous act and wanton disregard for human life.

Thus, though the judge's harsh comments to the defense counsel might be considered a lack of professional decorum, we are completely satisfied his conduct had no prejudicial effect on the members weighing of the overwhelming evidence of guilt in this case and did not unduly hamper the defense presentation of its case.  In reaching that conclusion, we find that the record as a whole demonstrates that the military judge did not entertain a pervasive bias against the defense counsel that made fair judgment for the appellant impossible; moreover, we are equally satisfied that the military judge did not abandon judicial impartiality or create the objective appearance thereof.  Liteky v. United States, 510 U.S. ___, 114 S. Ct. ___, 127 L. Ed. 2d 474 (1994); United States v. Reynolds, 24 M.J. 261, 264 (C.M.A.

---

[3]American Bar Association, Code of Judicial Conduct 3B(4)(1990)(a judge should be patient, dignified, and courteous to lawyers in their official dealings).

■

1987).  Accordingly, his denials of the challenge for cause and the motion for mistrial were proper.

The findings of guilty and the sentence are affirmed.

Chief Judge CUTHBERT and Senior Judge LANE concur.

FOR THE COURT:

*Mary B. Dennis*
MARY B. DENNIS
Deputy Clerk of Court