UNITED STATES, Appellee,

v.

Jon A. COOPER, Captain, U.S. Air Force, Appellant.

No. 98–0704.
Crim.App. No. 32388.

U.S. Court of Appeals for the Armed Forces.

Argued Jan. 14, 1999.

Decided Aug. 12, 1999.

**248**

SULLIVAN, J., delivered the opinion of the Court, in which COX, C.J., and CRAWFORD and EFFRON, JJ., joined. GIERKE, J., filed an opinion concurring in part and in the result.

For Appellant: *Captain Teresa L. Davis* (argued); *Colonel Douglas H. Kohrt* and *Lieutenant Colonel Ray T. Blank, Jr.* (on brief).

For Appellee: *Major Ronald A. Rodgers* (argued); *Colonel Anthony P. Dattilo* (on brief); *Lieutenant Colonel Michael J. Breslin.*

Judge SULLIVAN delivered the opinion of the Court.

During August of 1996, appellant was tried by a general court-martial composed of members at McConnell Air Force Base, Kansas. Contrary to his pleas, he was found guilty of 4 specifications of conduct unbecoming an officer by masturbating in public view and 3 specifications of indecent exposure, in violation of Articles 133 and 134, Uniform Code of Military Justice, 10 USC §§ 933 and 934, respectively. On August 21, 1996, he was sentenced to a dismissal, confinement for 1 month, and total forfeitures. On October 17, 1996, the convening authority reduced the monthly forfeiture, but otherwise approved this sentence. The Court of Criminal Appeals dismissed the 3 specifications of indecent exposure because they were multiplicious for findings, unpub. op. at 2, but it affirmed the remaining findings of guilty and the approved sentence in an unpublished decision dated December 31, 1997.

On August 28, 1998, this Court granted review on the following issue:

WHETHER THE MILITARY JUDGE PREJUDICED APPELLANT BY ABANDONING HIS IMPARTIAL ROLE AND WRONGFULLY REPRIMANDING TRIAL DEFENSE COUNSEL BEFORE THE MEMBERS FOLLOWING DEFENSE COUNSEL'S COMPLAINT TO THE MILITARY JUDGE THAT HE APPEARED TO BE HELPING THE PROSECUTION PERFECT THEIR CASE, AND BY WRONGFULLY COMMENTING ON THE QUALITY OF THE EVIDENCE.

Although some of the judge's comments may have been improper, we hold that his conduct in its entirety did not plainly cause him to lose his impartiality or the appearance of impartiality required of him as a judge at this court-martial. *See United States v. Acosta,* 49 MJ 14, 18 (1998); *see also United States v. Adkins,* 741 F.2d 744, 748 (5th Cir.1984); *see generally United States v. Powell,* 49 MJ 460 (1998) (military plain-error rule).

The record of trial in this case shows that the military judge stated the following to the members after a recess taken during the Government's case in chief:

MJ: *Members of the court, during that last recess, Captain Dulaney, the assistant defense counsel, made a remark to me, thanking me for helping perfect the Government's case, presumably, through the questions I asked.* Let me just note the following as strongly as I can. It is certainly not my intention, as the trial judge, to help perfect the case for either side, and certainly, you must disregard any comment, expression, or gesture made by me during the course of this trial which might seem to indicate an opinion on my part as to whether the accused is guilty or not guilty, because that's for you to decide. And, by way of explanation, I only note that the questions I asked are hopefully to facilitate the proceeding. As an outsider,

things that might be clear as gin to counsel are not clear to me. It's one of my duties to try to keep the confusion factor down, to anticipate, after doing this for what's going on my ninth year now, things that may be of concern in deliberations that get you wrapped around an axle for hours on end, when they need not, and also to avoid the recalling of witnesses such as, "How do you know this happened on the 26th of January?" for example, to get this trial completed in a timely fashion. So don't indicate or conclude from any of my questions that I am trying to help either side. And I can only say that I'm most disappointed that Captain Dulaney would indicate that to me.

*Now, having halfway chewed him out, certainly, don't hold any of that against his client, Captain Cooper.* But, in the event my questions of the last witness were such that it raised any of that in any of your minds, please take this last instruction to heart.

Trial counsel, call your next witness, please.

(Emphasis added.)

The Court of Criminal Appeals summarized additional facts from the record which gave rise to the granted issue, as follows:

*The military judge had, in fact, asked several pointed questions of the prosecution witness—questions the trial counsel probably should have asked.*

The second of these allegations refers to a defense attempt to introduce a videotape, taken by the appellant's wife from the appellant's back deck. The video was evidently short and of poor quality. After the defense counsel played the videotape for the witness (the appellant's wife), *the military judge said: "This is why still photographs are better. Let the record reflect that this video was jumping all around, and now we have a dark—no screen at all."*

Defense counsel rewound the tape and played it again for the witness, asking questions about things depicted on the tape. When he had concluded, the military judge again vented:

*I don't know what to say about this video, members. Why we didn't have still photographs is beyond me. But* [defense counsel] *cover the ground with the witness, would you, as far as whether it describes the scene, distances, and things like that, or I'm going to tell the members to disregard, because that is horrible.*

\* \* \*

*There was no objection, on the record, to any of the judge's comments—therefore,* once again, we must approach this issue with a "plain error" analysis. We note at the outset that this military judge was more aggressive in his use of "clarifying questions" than many judges would dare. However, in the absence of objection on the record, it is very difficult to find plain error. The appellant was represented by two qualified military counsel, who were present when all of the comments above were made. There were a number of avenues they could have pursued had they felt the military judge was demonstrating partiality, including voicing their concerns in an Article 39(a) session and, if they still felt aggrieved, moving for a mistrial. If counsel, who were present, didn't feel the need to take some action during the trial, we are loath to find plain error on a sterile record.

Unpub. op. at 3–5 (emphasis added).

— — —

For the first time on appeal, appellant challenges certain questions and comments of the military judge made during his trial in the presence of the members of his court-martial. He particularly asserts that the military judge's questioning of certain witnesses perfected the Government's case and his comments to members unfairly criticized defense counsel and disparaged defense videotape evidence. He contends that such improper judicial conduct in this close case prejudicially denied him his constitutional right to an "unbiased and impartial" judge (*see Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)), and his additional

military due process right to a judge who appears fair and impartial. *See United States v. Ramos,* 42 MJ 392, 396 (1995); *United States v. Reynolds,* 24 MJ 261, 264 (CMA 1987). We disagree.

■ The first question we will address is whether the military judge's conduct, *i.e.,* his questions and comments, denied appellant his constitutional right to an impartial judge sitting at his court-martial. Appellant generally cites *Tumey* for this claim but proffers no legal standard from that Supreme Court decision other than that it is "[d]enial of due process for an individual to be tried by a judge who is not unbiased and impartial." Final Brief at 11. Although we agree that appellant is entitled to a fair and impartial judge, we see no systemic constitutional infirmity in appellant's case similar to that found in *Tumey.*

Tumey was tried by the mayor of his village for unlawfully possessing intoxicating liquor, a trial procedure authorized by state statute. The accused objected to trial by the mayor on the basis that by statute the mayor received a fee for costs if an accused was convicted but he would not receive such a fee if the accused was acquitted. The Supreme Court held trial by a judge who "has a direct, personal, substantial pecuniary interest in reaching a conclusion against" an accused violated constitutional due process of law. *Id.* at 523, 47 S.Ct. 437. Those facts do not exist in this case, and no other direct, personal, substantial, pecuniary or other disqualifying interest in appellant's conviction has been alleged or shown to exist for this military judge.

The next question we will address is whether the judge's conduct noted above denied appellant his military due process right to a judge who appears impartial throughout his court-martial. *See U.S. v. Ramos, supra,* and RCM 801(c), Discussion, Manual for Courts–Martial, United States (1995 edition) *; see also United States v. Bishop,* 11 USCMA 117, 120, 28 CMR 341, 344 (1960). For the first time on appeal, he asserts that

the military judge asked too "many questions helpful to the prosecution"; "ridiculed defense counsel" for objecting to this perfection of the prosecution's case; and adversely commented on the poor quality of the defense evidence. Final Brief at 11. He concludes by arguing that his case was close and the military judge's curative instructions were not sufficient to prevent the members from being adversely prejudiced by the judge's appearance of favoring the prosecution. *See United States v. Lindsay,* 12 USCMA 235, 239, 30 CMR 235, 239 (1961). We again disagree.

Initially, we note that military practice and procedure expressly provide for questioning of witnesses by a military judge (*see* Mil. R.Evid. 614(b), Manual, *supra*), and our case law requires that it be done in a fair and impartial manner. *See Acosta,* 49 MJ at 17; *United States v. Hill,* 45 MJ 245, 249 (1996). Here, defense counsel did not object on the record to any of the military judge's questions (*see* Mil.R.Evid. 614(b)), or move to disqualify the judge on the basis of these questions under RCM 902(a) and (d). This failure to act by defense counsel strongly suggests that the defense did not believe these questions caused the military judge to lose his impartiality or his appearance of impartiality on this basis. *Acosta, supra* at 18; *Hill, supra* at 249.

■ We further note that appellant's post-trial attack on the military judge's questioning as prosecution-oriented is not persuasive. We have reviewed the record where he asserts such prosecutorial questioning occurred and find those judicial inquiries to concern matters previously covered by trial counsel or defense counsel. *Acosta, supra* at 18. Moreover, the mere fact that the answers to these questions may help or hurt one party's case does not suggest partiality, especially where the military judge makes clear his neutral purpose in asking these questions. *Id.* at 17–18; *Lindsay,* 12 USCMA at 239, 30 CMR at 239. Here, the judge explained to the members, albeit belatedly, the neutral

---

* All Manual provisions are cited to the version applicable at trial. The 1998 version is un-

changed, unless otherwise indicated.

intent of his questions to avoid confusion for the members and the inconvenience of recalling witnesses. *See Reynolds, supra* at 264 (harsh comments reflecting judge's "control of the proceedings" not improper).

■ Finally, the military judge gave unequivocal instructions to the members that they should not view his questions as indicating a pro-prosecution opinion on his part in this case. He further instructed them that it was their duty to decide appellant's guilt or innocence and they must disregard anything the military judge said which might seem to indicate that he had an opinion concerning appellant's guilt or innocence. *Acosta, supra* at 18. In view of all these circumstances, we conclude that the military judge's questions created no reasonable doubt as to appellant's court-martial's legality, fairness, and impartiality. *See Acosta, supra* at 19; *Ramos, supra* at 396; *Reynolds, supra* at 265.

■ Turning next to the military judge's averred humiliation of defense counsel, we think this claim is somewhat overstated. After the military judge instructed the members to draw no inference from his questions as to his personal opinion in this case, he did gratuitously note his disappointment that defense counsel had raised this issue. Moreover, he further stated to the members that he "halfway chewed him [defense counsel] out" for raising this concern. Nevertheless, we conclude that the military judge's personal expression of irritation with defense counsel before did not divest him of the appearance of impartiality required for a court-martial. *See United States v. Horne*, 44 MJ 216, 217 (1996) citing *Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *see* 555 ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, *ordinarily* do not support a bias or partiality challenge." (Emphasis added.)).

■ Several reasons exist for our conclusion that this is not an extraordinary case requiring reversal of appellant's conviction. First, defense counsel lodged no objection to the military judge's curative instructions on the grounds that the judge's comments fur-

ther evidenced his bias for the Government. *See* RCM 801(g) (effect of failure to raise defenses or objections). Moreover, he made no motion to disqualify the military judge from continuing to sit in this case on the basis of these judicial remarks. *See Acosta, supra* at 18. Third, the judge's reprimand, although probably unjustified and certainly improper before the members, was no more than a mild rebuke of defense counsel ("having halfway chewed him out"). Finally, the now-challenged comments were couched within unequivocal instructions from the judge protecting appellant from any impermissible use of his comments. In these circumstances, we conclude that they plainly created no reasonable doubt concerning the integrity of this court-martial. *See Reynolds, supra* at 264 (even harsh comments can be used by judge to exercise control over proceedings); *Liteky, supra* at 536, 114 S.Ct. 1147 ("even a stern and short-tempered judge's ordinary efforts at courtroom administration . . . remain immune").

■ Finally, we turn to the military judge's comments on the poor quality of the defense's videotape evidence. Article 26(a), UCMJ, 10 USC § 826(a), generally provides that a "military judge shall preside over each open session of the court-martial to which he has been detailed." Moreover, RCM 920(e)(7) states that "[i]nstructions on findings shall include . . . (7). Such other explanations, descriptions, or directions as may be necessary and which are properly requested by a party or *which the military judge determines, sua sponte, should be given.*" (Emphasis added.) The drafters of this Presidential Rule commented on its meaning in the Discussion to this Rule, as follows:

> The military judge may summarize and comment upon evidence in the case in instructions. In doing so, *the military judge should present an accurate, fair, and dispassionate statement of what the evidence shows; not depart from an impartial role;* not assume as true the existence or nonexistence of a fact in issue when the evidence is conflicting or disputed, or when there is no evidence to support the matter; and

make clear that the members must exercise their independent judgment as to the facts.

(Emphasis added.) We think this same rule should apply to comments on evidence made during trial. *See generally* S. Childress and M. Davis, 2 *Federal Standards of Review* § 11.15 (2d edition 1992).

Here, the military judge's comments on the poor quality of the defense videotape evidence, if viewed in isolation, may have been improper under the above standard. *But cf. Reynolds,* 24 MJ at 264. However, he had implicitly admitted this defense evidence without viewing the video on the basis of the Government's lack of "objection to it." Moreover, he did so despite his stated preference for still photographic evidence. Thus, his initial comments after seeing the tape more accurately suggest his frustration with the form of this evidence, not the party presenting it. Finally, his later comments were expressly directed to helping the defense present this evidence to the members in a more understandable fashion which defense counsel did without objection. Thus, in proper context, these comments lose their impermissible biased flavor. *See generally* Mil. R.Evid. 104(b) (conditions for admission of evidence).

Nevertheless, assuming that these evidentiary comments might possibly be perceived as unfair, that is not enough for reversal. *See also Adkins,* 741 F.2d at 748. The burden was on appellant to make an objection to these comments. RCM 920(f) provides:

> (f) *Waiver.* Failure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes waiver of the objection in the absence of plain error. The military judge may require the party objecting to specify of what respect the instructions given were improper. The parties shall be given the opportunity to be heard on any objection outside the presence of the members.

*See also* Mil.R.Evid. 103(a)(1) (requirement for specific evidentiary objection). Appellant made no such objection and, therefore, a plain-error analysis is appropriate. We agree with the appellate court below that, in

view of the circumstances noted above, these unchallenged comments did not clearly or obviously raise a reasonable doubt concerning this judge's impartiality. *See Acosta,* 49 MJ at 18; *see also Powell,* 49 MJ at 463 ("that the error be 'plain,' that is, 'clear' or, equivalently, 'obvious'") (internal quotation marks omitted).

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

GIERKE, Judge (concurring in part and in the result):

There are three aspects to the granted issue: (1) the military judge's questioning of the witnesses; (2) the military judge's chiding of defense counsel for objecting to his questioning; and (3) the military judge's comments on the defense evidence.

For reasons not apparent on the record, assistant defense counsel did not object in open court but instead voiced his objection during a recess. The military judge described this off-the-record objection as follows: "Members of the court, during that last recess, Captain [D], the assistant defense counsel, made a remark to me, thanking me for helping perfect the Government's case, presumably, through the questions I asked." In my view, this informal, out-of-court objection was the functional equivalent of an RCM 802 conference. Once assistant defense counsel voiced his objection to the military judge's questions, the military judge had two options:

(1) Treat it as a defense objection and make it a matter of record in accordance with RCM 802(b); or

(2) Inform counsel that he would not entertain such an objection off the record and require that the objection be made on the record in open court.

If the military judge had exercised the second option and defense counsel did not make his objection on the record, I would agree with the majority that it was waived. Since, however, the military judge exercised the first option, I believe that the first two aspects of the granted issue were preserved for appellate review. Because defense coun-

sel did not object to the military judge's comments on the evidence, I join the majority in holding that there was no plain error as to the third aspect.

I concur in the result, for the reasons set out below.

*Questioning the Witnesses.* A military judge must scrupulously avoid "even the slightest appearance of partiality." *United States v. Ramos,* 42 MJ 392, 396 (1995). A military judge's "influence ... is necessarily and properly of great weight," and his "last word is apt to be the decisive word." *United States v. Clower,* 23 USCMA 15, 18, 48 CMR 307, 310 (1974) (internal quotation marks omitted). On the other hand, because military judges are more than "mere referees," it is appropriate for them to take an active part in the trial. Thus, while military judges may not become partisan advocates, they may and "sometimes must ask questions ... to clear up uncertainties in the evidence or to develop the facts further." *Ramos, supra* at 396. "The legal test ... is whether, taken as a whole in the context of this trial," the trial's "legality, fairness, and impartiality were put into doubt by the military judge's questions." *United States v. Acosta,* 49 MJ 14, 18 (1998) (internal quotation marks omitted). The test is applied through the eyes of a reasonable person. *Ramos, supra* at 396. I conclude that a reasonable person, viewing the questions of the military judge in a proper context, would not doubt the impartiality of the military judge in this case. *See United States v. Acosta, supra.*

*Chiding Defense Counsel.* I agree with the majority that it was inappropriate for the military judge to chide the defense counsel for objecting to his questions. The military judge "must be circumspect in what he says to the parties." *United States v. Loving,* 41 MJ 213, 253 (1994), *aff'd on other grounds,* 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996). Nevertheless, the context of the military judge's remarks, including his detailed cautionary instruction, satisfy me that a reasonable person would not doubt his impartiality. 41 MJ at 253, citing *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994); *United States v. Ramos, supra.*

*Comments Regarding Evidence.* "Generally, a judge's comment on the evidence is a matter within the judge's sound discretion." He abuses his discretion only if he takes "a partisan view of the evidence." *United States v. Damatta–Olivera,* 37 MJ 474, 479 (CMA 1993). In this case, the military judge expressed impatience with the poor technical quality of videotape, but not its relevance or probative value. He criticized the quality of the tape, not the party presenting it. Because it is clear from the record that the military judge did not blame appellant for the poor quality of the videotape, a reasonable person would not have doubts about the military judge's impartiality. *United States v. Ramos, supra.* In my view, there was no error at all, much less plain error.