# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WALKER, EWING,[1] and PARKER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 TREVON K. COLEY**
**United States Army, Appellant**

ARMY 20220231

Headquarters, 21st Theater Sustainment Command
Charles L. Pritchard, Jr. and Lance R. Smith, Military Judges
Major Dane M. Rockow, Acting Staff Judge Advocate

For Appellant: Colonel Michael C. Friess, JA; Lieutenant Colonel Dale C. McFeatters, JA; Jonathan F. Potter, Esquire; Major Rachel P. Gordienko, JA; Captain Rachel M. Rose, JA (on brief); Colonel Philip M. Staten, JA; Jonathan F. Potter, Esquire; Major Robert W. Rodriquez, JA; Captain Rachel M. Rose, JA (on reply brief); Colonel Philip M. Staten, JA; Major Robert W. Rodriquez, JA; Captain Rachel M. Rose, JA (on supplemental brief).

For Appellee: Colonel Christopher B. Burgess, JA; Lieutenant Colonel Jacqueline J. DeGaine, JA; Lieutenant Colonel Pamela L. Jones, JA; Captain Lisa Limb, JA (on brief). Colonel Christopher B. Burgess, JA; Lieutenant Colonel Jacqueline J. DeGaine, JA; Major Timothy R. Emmons, JA; Captain Lisa Limb, JA (on supplemental brief).

13 March 2024

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

PARKER, Judge:

Appellant raises five assignments of error, four of which warrant discussion but no relief.[2] First, we find appellant was not prejudiced by the alleged

---

[1] Judge EWING decided this case while on active duty.

(continued . . .)

instructional error. Second, appellant has failed to meet the burden to establish there was ineffective assistance of counsel. Third, appellant has failed to show prejudice despite his argument that unlawful command influence resulted in the improper manipulation of the criminal justice process in his trial. Last, appellant has failed to show prejudice for the judicial reassignment of his case.

## BACKGROUND

In March 2021, appellant left his barracks room in Kaiserslautern, Germany, to meet up with Private (PV2) ▓ and another soldier in town. All three soldiers drove their own vehicles back to the barracks and during the trip each were speeding, weaving in and out of traffic, and switching lanes. At one point appellant was in the lead and headed toward a dangerous intersection going approximately 107 miles per hour while the other two vehicles appear to have fallen behind. When appellant entered the intersection, he collided with a vehicle driven by Specialist (SPC) ▓ with Private First Class (PFC) ▓ as her passenger. Specialist ▓ was making a left-hand turn when appellant crashed into the driver's side of SPC ▓'s vehicle—going approximately sixty-eight miles per hour upon impact—killing SPC ▓ and causing grievous bodily injury to PFC ▓. As the two other vehicles approached the intersection, they saw appellant's vehicle smoking and damaged in the road.

Appellant was largely unharmed. After the crash he got out of his car and spoke to his two friends who had pulled over. Appellant asked PV2 ▓ to say she was driving his vehicle because appellant had a suspended license, to which PV2 ▓ agreed. When emergency services arrived, appellant informed a police officer that he had only been a passenger in the damaged vehicle. Private ▓ informed the police officer that she had been driving the damaged vehicle, and she was then taken to the hospital for evaluation. At the time of the accident appellant did not have a valid vehicle license or registration.

Appellant was tried before an officer panel at a general court-martial located at Kaiserslautern, Germany. Pursuant to his pleas, appellant was convicted of two offenses: conspiracy to obstruct justice, and a violation of a lawful general regulation for wrongfully operating a motor vehicle without a valid license and registration, in violation of Articles 81 and 92, Uniform Code of Military Justice, 10

---

(. . . continued)
[2] We have given full and fair consideration to appellant's other assignment of error, to include matters submitted personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they lack merit and warrant neither additional discussion nor relief.

U.S.C. §§ 881 and 892 [UCMJ], respectively. Contrary to his pleas, appellant was convicted of two offenses: involuntary manslaughter and aggravated assault, in violation of Articles 119 and 128, UCMJ, respectively.[3] Appellant was sentenced by the panel to a bad-conduct discharge, 8 years of confinement, reduction to E-1, and total forfeitures of all pay and allowances.

On appeal, appellant alleges three assignments of error related to the trial, two of which merit discussion. First, appellant argues there was an instructional error as to an affirmative defense, and second, appellant argues his defense counsel were ineffective in investigating and preparing for trial. Additionally, in a supplemental brief after appellate discovery, appellant alleges two assignments of error related to the military judge who presided over his trial. Both of appellant's supplemental arguments warrant discussion.

## LAW AND DISCUSSION

### A. Alleged Instructional Error

Appellant argues that the evidence at trial raised reasonable support for the affirmative defense of contributory negligence instruction, and that the military judge erred when he did not provide it to the panel members sua sponte. The government argues that appellant waived this claim, but even so, that the military judge properly instructed the panel by providing the instruction for involuntary manslaughter by culpable negligence, which includes its own tailored contributory negligence instruction. The government further argues that the involuntary manslaughter by culpable negligence instruction combined with the proximate cause instruction provided to the panel were substantially similar to the affirmative defense of contributory negligence instruction appellant is now arguing was required on appeal. Where an appellant preserves the claim at trial, an allegation of an improper panel instruction is a question of law we review de novo. *United States v. Payne*, 73 M.J. 22 (C.A.A.F. 2014). The question of whether an accused has waived an issue is also reviewed de novo. *United States v. King*, 83 M.J. 115, 120 (C.A.A.F. 2023) (citation omitted).

### 1. Waiver

"[F]orfeiture is the failure to make the timely assertion of a right . . . ." *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (cleaned up). "Waiver can occur either by operation of law . . . or by the intentional relinquishment or

---

[3] The panel acquitted appellant of leaving the scene of an accident, and murder, in violation of Articles 111 and 118, UCMJ.

abandonment of a known right." *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (cleaned up). "If the appellant waived the objection, then we may not review it at all." *Id.* "In making waiver determinations, we look to the record to see if the statements signify that there was a 'purposeful decision' at play." *United States v. Gutierrez*, 64 M.J. 374, 377 (C.A.A.F. 2007) (quoting *United States v. Smith*, 50 M.J. 451, 456 (C.A.A.F. 1999)).

The evidence at trial focused both on appellant's driving the night of the accident, including the excessive high rate of speed in which he drove his vehicle through an otherwise busy intersection at night, and whether SPC ▮ used reasonable care in the operation of her vehicle. Specifically, that evidence centered on SPC ▮ rolling through a stop sign as she entered the intersection just prior to the accident. Based on the evidence raised by the parties, the military judge provided the panel with the proximate cause instruction for involuntary manslaughter, and the affirmative defense instruction for an accident.[4] The military judge did not provide the affirmative defense instruction for contributory negligence, *nor did the defense counsel request one.*[5]

---

[4] The military judge also provided the following instruction for the involuntary manslaughter by culpable negligence offense:

> There is evidence in this case raising the issue of whether the deceased failed to use reasonable care and caution for her own safety. If the accused's culpable negligence was a proximate cause of the death, the accused is not relieved of criminal responsibility just because the negligence of the deceased may also have contributed to her death. The conduct of the deceased is, however, important on the issue of whether the accused's culpable negligence, if any, was a proximate cause of the death. Accordingly, a certain act may be a proximate cause of death even if it is not the only cause, as long as it is a direct or contributing cause and plays an important role in causing the death. An act is not a proximate cause of the death if some other force independent of the accused's act intervened as a cause of death.

[5] We pause to note that appellant does not allege ineffective assistance of counsel for the failure to request such an instruction, but rather argues that it was the military judge who had a sua sponte duty to provide such instruction.

4

Appellant had multiple opportunities to discuss the military judge's instructions. First, after both parties reviewed the military judge's draft instructions, defense counsel affirmatively stated they had no objections, and specifically declined to request any additional instructions. Second, after the military judge read the instructions to the panel, defense counsel again offered no objection and again declined the military judge's offer to defense on whether they wanted any additional instructions provided to the panel. In total, the defense counsel offered no objection to the instructions numerous times, and twice responded "no" to the military judge's question on whether appellant wanted any additional instructions.

Rule for Courts-Martial [R.C.M.] 920(f) states, "[f]ailure to object to an instruction or to omission of an instruction before the members close to deliberate forfeits the objection." However, our superior court clarified in *United States v. Davis* that it is *waiver* and not forfeiture where an appellant affirmatively declines to object to instructions and offers no instructions of his own. 79 M.J. 329, 330-32 (C.A.A.F 2020). This is how appellant finds himself positioned in this case; he affirmatively declined to object to the military judge's draft instructions, declined to offer additional instructions, then declined to object after they were read to the panel, and then again affirmatively declined to provide any additional instructions of his own. In *Davis*, our higher court found that appellant, "[h]aving directly bypassed an offered opportunity to challenge and perhaps modify the instructions, [has] waived any right to object to them on appeal." *Id.* at 331 (quoting *United States v. Wall*, 349 F.3d 18, 24 (1st Cir. 2003)).

We additionally highlight that in considering the recent changes to our review authority under Article 66, UCMJ, this court "may affirm only such findings of guilty as the Court finds *correct in law*, and in fact" in appellant's case.[6] UCMJ art. 66(d)(1)(A), 10 U.S.C. § 866 (2018 & Supp. IV 2023). This is a departure from our previous mandate to "affirm only such findings of guilty . . . as the Court finds correct in law and fact and determines, on the basis of the entire record, *should be approved*." UCMJ art. 66, 10 U.S.C. § 66 (2018). Given this change, the court can no longer pierce waived claims, because "[a] valid waiver extinguishes the claim of legal error." *United States v. Ahern*, 76 M.J. 194, 197-98 (C.A.A.F. 2017). "As such, a case becomes 'correct in law' for purposes of Article 66 review when a valid waiver applies to what would otherwise be prejudicial error." *United States v. Conley*, 78 M.J. 747, 749 (Army Ct. Crim. App. 2019)

---

[6] Further changes to Article 66 require an accused to make a "specific showing of a deficiency in proof" before this court can conduct a factual sufficiency review. UCMJ art. 66(d)(1)(B)(i), 10 U.S.C. § 866 (2018 & Supp. IV 2023).

While we agree with the government that appellant could have waived this issue if it involved solely an affirmative declination to object to the military judge's instructions at trial, we find this case distinguishable from the instructional error waived in *Davis*, 79 M.J. 329, because it involves an affirmative defense instruction.[7] Stated another way, the *Davis* court was not presented with appellant's current argument that this is not an issue of waiver, but rather an issue of whether the military judge failed in his sua sponte duty to provide the affirmative defense instruction to the panel, despite defense counsel's lack of objections or request for such an instruction. As such, we reject the government's assertion that this issue is waived.[8]

### 2. Sua Sponte Duty for Affirmative Defense Instructions

"A military judge has a sua sponte duty to give certain instructions when reasonably raised by the evidence, even though the instructions are not requested by the parties." *Gutierrez*, 64 M.J. at 376 (citing *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002)). "This Court reviews the adequacy of a military judge's instruction de novo." *United States v. Davis*, 73 M.J. 268, 271 (C.A.A.F. 2014) (citing *United States v. Dearing*, 63 M.J. 478, 482 (C.A.A.F. 2006)). Military judges are duty bound to give available defense instructions if raised by the evidence. *Davis*, 73 M.J. at 272 (citations omitted). Instructional errors that raise constitutional implications are tested for prejudice under the standard of harmless beyond a reasonable doubt. *Id.* at 271 (citation omitted). "The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is

---

[7] *See United States v. Davis*, 76 M.J. 224, 226 (C.A.A.F. 2017) ("Because appellant failed to object to the omission of a required instruction on a special defense, we review the military judge's instructions for plain error.").

[8] We also distinguish this case from *Gutierrez*, 64 M.J. 374, 375-78, where our superior court reversed the Army Court of Criminal Appeal's finding that the military judge had erred in not giving an affirmative defense instruction sua sponte that he was duty-bound to give because appellant had not affirmatively waived the issue at trial. The CAAF disagreed with ACCA's analysis of waiver, finding that defense counsel had affirmatively waived the instructional issue at trial through his actions. In that case, the military judge raised the defense of mistake of fact instruction and specifically asked counsel if he was requesting one, which counsel affirmatively declined by stating "I simply do not want to request one for battery." *Id.* at 377. *Gutierrez* is factually distinct from this case, where neither the judge nor defense counsel proposed the affirmative defense instruction that was raised by the evidence.

whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence." *Id.* at 273 (cleaned up).

On this issue, we assume without deciding, that the military judge should have provided the affirmative defense instruction of contributory negligence, sua sponte. Assuming without deciding error, we turn to whether appellant was prejudiced by the alleged instructional error. We find that appellant was not prejudiced because the failure to provide the affirmative defense instruction sua sponte did not contribute to appellant's conviction.

While the military judge provided the instructions as described above, appellant avers that the absence of the affirmative defense of contributory negligence instruction, with its "looms so large" language specifically, prevented the panel from considering SPC ███'s driving conduct compared to appellant's.[9] Appellant argues that the absence of this language meant the panel was not guided to consider whether the government met their burden of proving that appellant's misconduct exceeded that of SPC ███'s. Appellant alleges this was prejudicial and denied him of a properly instructed panel and a fair trial. We disagree with appellant. The evidence supporting appellant's guilt was overwhelming. Even assuming all appellant's arguments about SPC ███'s driving were true, it does not change that any assumed fault by SPC ███ was miniscule in comparison to appellant's driving 107 miles per hour into an intersection with obstructed lighting and visibility. We have no doubt that the panel members would have found appellant guilty even with the additional "looms so large" language from an additional instruction. We find based on the facts of appellant's case he suffered no prejudice from the assumed instructional error.

*B. Ineffective Assistance of Counsel*

Appellant alleges that his trial defense counsel were ineffective by failing to properly investigate appellant's case by: (1) not interviewing the medical professionals from the accident scene, and (2) failing to interview Mr. ███ and present his opinion that SPC ███, not appellant, was at fault for the accident. Accordingly, appellant asks this court to reverse his convictions for involuntary manslaughter and aggravated assault. As a result of the ineffective assistance of counsel assignment of error, affidavits were submitted to this court by appellant's

---

[9] *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 5-19, note 7 (29 Feb. 2020).

trial defense counsel, Mr.█████and Captain███. We disagree with appellant's assertions and find appellant's trial defense counsel were not ineffective.[10]

Allegations of ineffective assistance of counsel are reviewed de novo. *United States v. Cueto*, 82 M.J. 323, 327 (C.A.A.F. 2022) (citing *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011)) (citation omitted). "To prevail on an ineffective assistance claim, the appellant bears the burden of proving that the performance of defense counsel was deficient and that the appellant was prejudiced by the error." *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)). "With respect to *Strickland's* first prong, courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (quoting *Strickland*, 466 U.S. at 689). "As to the second prong, a challenger must demonstrate 'a reasonable probability that, but for counsel's [deficient performance] the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694) (alteration in original). "It is not enough to show that the errors had some conceivable effect on the outcome . . . ." *Id.* (cleaned up). Appellant has made no such showing here.

Appellant first asserts his defense counsel were deficient in their performance by not interviewing the medical professionals who treated SPC ███ and SPC █ at the scene of the accident. In support, appellant highlights that his defense team attacked the government's attempts to prove that appellant caused the accident, and SPC███s death. The defense team did so, in part, by suggesting that negligent medical care was provided to SPC███via an improper administration of ketamine, which was a contributing factor to her death. Appellant asserts his defense team was ineffective because even though this was their argument at trial, they failed to conduct a proper pretrial investigation and interview the medical professionals on the scene.

The affidavits provided by defense counsel provide insight on the trial preparation plan and strategy regarding the medical professionals on the scene. Captain (CPT)███states that he did not interview emergency personnel who treated SPC███or SPC█but did interview a different German emergency medical professional on the scene and recalled that this witness had no independent memory

---

[10] Having considered the principles set forth in *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), we find no competing information contained within the affidavits submitted by defense counsel and there is no affidavit submitted by appellant. Additionally, the record of trial and affidavits provide us all necessary information to decide appellant's allegations. Therefore, we are able to resolve appellant's claim of ineffective assistance of counsel without ordering a post-trial evidentiary hearing. *See Ginn*, 47 M.J. at 248.

of her actions after the accident and would only be able to rely on the medical report she previously prepared. Mr. ███'s affidavit states he interviewed the doctor that performed SPC ███'s autopsy but not the treating paramedics on the scene that night. He reasoned that although the defense intended to discuss the issue of ketamine to raise reasonable doubt as to the cause of death, it was a "grasp at straws" theory given that the evidence supported the accident itself caused the death and injuries. Both the government and defense reconstruction experts relied on the "hardness of impact" of the accident, which was in addition to the medical examiner stating all injuries were caused by the accident, and the defense medical consultant concurring. Additionally, CPT ███ states that the defense strategy focused on who was at fault for the accident, rather on the cause of injury and death. From the witnesses whom defense did interview, and with the help of experts they consulted, the defense team determined this strategy would have the highest chance of success because it was clear that SPB ███ and SPC ███'s injuries were caused by the accident. Although the autopsy detected ketamine in SPC ███'s blood, and defense used this to inject some reasonable doubt into the cause of SPC ███'s death, it was not the defense's main theory. In fact, based on the information the defense received from its experts and the interviews of other personnel, they determined the ketamine was likely administered properly and did not cause SPC ███'s death. As to SPC ███, it was also clear from the medical documentation the impact of the accident was the cause of her injuries. As explained by Mr. ███, a list of paramedics testifying that they provided appropriate medical care to SPC ███ and SPC ███ would not be helpful to the defense. This was especially the case because the defense's own consultant, as well as the medical examiner, indicated there was no evidence of improper medical care.

Defense counsel both admit they did not interview the medical personnel who treated SPC ███ and PFC ███ at the scene. They also provide their reasonable strategic reasons for not doing so, as described above. Appellant bears the burden of proving deficient performance by counsel. The bare assertion that the failure to interview medical personnel was ineffective because it resulted in a lack of evidence to support an improper administration of ketamine, when no such evidence appeared to exist, fails to meet that burden.

Second, appellant asserts his defense team were ineffective because they did not interview Mr. ███ a German accident investigator, who arrived on the scene following the collision. Both defense counsel affidavits make it clear they did in fact interview Mr. ███, although it is important to note that Mr. ███ did not possess the same accident reconstruction expert qualifications as the government and defense experts. With both defense counsel affidavits confirming Mr. ███ was interviewed prior to trial, and no evidence to the contrary, we find appellant failed in his burden of proving deficient performance by counsel by failing to interview Mr. ███ in preparation for trial.

9

Relatedly, appellant asserts his defense counsel were ineffective for failing to present Mr. ███ s testimony or written report of the accident at trial. Mr. ███ relying on the German Police Accident Report, found that SPC ███ rolled into the intersection without stopping and that appellant was speeding more than the posted speed limit, findings that were consistent with conclusions from both the government and defense accident reconstruction experts. As explained in defense counsel's affidavits, both the government and defense experts concluded Mr. ███ made errors in his report, and that he was not qualified to render an opinion as an expert. Due to credibility concerns, even the defense's own expert relied on his own report and not Mr. ███ s despite having reached a few similar conclusions. Thus, the defense team concluded there was no strategic benefit in calling Mr. ███ as a witness only to have his credibility attacked and detract from the defense's case. Instead, the defense opted to elicit important facts contained in Mr. ███ s report from other witnesses in lieu of introducing a report they knew not to be entirely accurate, and even noted their fear that Mr. ███ could potentially even confirm the information the government expert put forth in his testimony. With both defense counsel affidavits addressing the strategic reasons for not introducing Mr. ███'s testimony or accident report, we find counsel were within their wide range of reasonable professional assistance and appellant has failed to meet his burden of proving deficient performance.

Based on our review of the record, and under the objective standard of reasonableness, we find no deficiency in defense counsels' performance. While we find no deficient performance and no error by counsel, we add that appellant has also failed to demonstrate prejudice and a reasonable probability that *but for* the alleged deficient performance there would have been a different result. Rather, appellant only offers speculation there would have been a different outcome.

### C. Unlawful Command Influence

Turning to appellant's supplemental assignments of error, he alleges that unlawful command influence resulted in the improper manipulation of the criminal justice process in his case in violation of Article 37, UCMJ.

Judge Pritchard presided over appellant's arraignment in January 2022. Also in January 2022, in an unrelated trial, Judge Pritchard ruled that an accused had a constitutional right to a unanimous verdict, a ruling that prompted the government to

file a writ for extraordinary relief.[11] The next month, in February 2022, appellant filed a motion for unanimous verdict. Prior to this court's opinion in *United States v. Pritchard*, 82 M.J. 686 (Army Ct. Crim. App. 2022)[12], which granted the government's writ, Judge Pritchard reassigned[13] himself from appellant's contested panel case. In approximately August 2022, the newly detailed Air Force military judge, Judge Smith, denied appellant's unanimous verdict motion. There were multiple appellate discovery motions filed by appellant regarding the reassigning of appellant's case from Judge Pritchard to Judge Smith.

In response to a motion by appellant for appellate discovery regarding the reassignment of appellant's case, this court ordered affidavits from Judge Pritchard and Judge Smith relating to the circumstances surrounding the reassignment. In Judge Pritchard's affidavit, he explained that after the extraordinary writ was filed on the unanimous verdict issue in January 2022, he intended not to rule on unanimous verdict motions until this court issued an opinion and until then, he would only remain detailed to bench trials. He also explained that in March 2022, he requested assistance in finding a trial judge for appellant's contested panel case, and in coordination with the U.S. Air Force Chief Circuit Military Judge for Europe, was informed that Judge Smith was available. Judge Smith was then officially detailed in April 2022 via the Memorandum of Agreement (MOA) between the Air Force and the Army for the cross-service detailing of military judges.

In Judge Smith's affidavit, he described the inquiry he received in April 2022 from his supervisor regarding his availability to take an Army case; how he was subsequently provided notice of his detailing to appellant's case per the MOA; and described his subsequent email notification of his detailing to the parties in appellant's case. Judge Smith also explained that in addition to emails with Judge Pritchard regarding the "handing off" of appellant's case, the two met in person to discuss the handoff, along with Judge Smith's supervisor, the Air Force Chief Circuit Military Judge – European Circuit. During this meeting, Judge Pritchard stated something to the effect of "you will deny the motion and move on," in reference to the topic of the then-pending unanimous verdict motion appellant had

---

[11] Our superior court found there was no right to a unanimous guilty verdict for courts-martial defendants in *United States v. Anderson*, 83 M.J. 291 (C.A.A.F. 2023).

[12] This case was decided on 9 June 2022.

[13] We use the phrase "reassigned" as appellant does in his initial brief. We note that in his reply brief appellant argued it was a disqualification and during oral argument he argued it was a recusal.

filed. Judge Smith stated he did not construe this comment to be an order but instead a statement of Judge Pritchard's awareness that he was the only military judge who had granted such a motion and as such, assumed Judge Smith would deny it. Judge Smith stated he did not feel influenced by Judge Pritchard in any way. Additionally, Judge Smith described how Judge Pritchard emailed him after this meeting stating in effect, that Judge Smith "should not take [Judge Pritchard's] comment as an attempt to influence [Judge Smith] in any way." Judge Smith stated that neither Judge Pritchard's ruling on the motion, nor his statement during the meeting, had any influence on appellant's unanimous verdict motion ruling, which he eventually denied. Judge Smith stated he ruled to deny the motion based on his understanding of the law, as he had done in several other cases, both before and after his ruling in appellant's case.

We review allegations of unlawful command influence de novo. *United States v. Bergdahl*, 80 M.J. 230, 234 (C.A.A.F. 2020) (citations omitted).). Appellant argues both actual unlawful command influence and the appearance of unlawful command influence. "To make a prima facie case of apparent unlawful command influence, an accused bears the initial burden of presenting 'some evidence' that unlawful command influence occurred." *Id.* (quoting *United States v. Boyce*, 76 M.J. 242, 249 (C.A.A.F. 2017)) (citation omitted). Actual unlawful command influence requires a showing of "(1) facts, which if true, constitute unlawful command influence; (2) unfairness in the court-martial proceedings (i.e., prejudice to the accused); and (3) that the unlawful influence caused that unfairness." *Boyce*, 76 M.J. at 248.

As to actual unlawful command influence, appellant alleges that Judge Pritchard's imperative statement to Judge Smith, "you will deny the motion and move on" was Judge Pritchard exerting improper influence on the outcome of appellant's trial. Appellant alleges this was improper influence because Judge Pritchard knew if the motion was not denied it would create a backlog of cases in that circuit, hence his direction to Judge Smith to deny the motion. Appellant also argues this statement raises concerns about Judge Smith's impartiality, especially concerning the presence of his supervisor at the meeting, and that Judge Pritchard's email to Judge Smith did not alleviate the intolerable strain on the perception of the fairness of appellant's trial.

To prevail on a claim of actual command influence, appellant must first show some evidence of unlawful command influence. If appellant meets this initial burden, the government must then rebut the allegations and show the facts as alleged are not true, that they do not constitute unlawful command influence, or that the unlawful command influence did not affect the findings or sentence. *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013). Appellant also alleges apparent unlawful command influence. Appellant adds that an objective observer would harbor significant doubts regarding the propriety of Judge Pritchard orchestrating a

closed-door meeting to ensure Judge Smith denied appellant's motion, and that many doubts remain regarding the meeting and discussion that ensued. He argues that appellant was prejudiced because he had a right to a trial that objectively is seen to be fair.[14]

We find that appellant has failed to meet his burden to show prejudice, under both actual and apparent unlawful command influence arguments. Appellant argues that he has established prejudice because he was entitled to both a trial that was fair and that was objectively seen to be fair. Specifically, appellant's unanimous verdict motion was denied and at the time Judge Pritchard removed himself from contested panel cases, higher courts had not yet ruled on this issue, so Judge Pritchard manipulated the process to ensure appellant's motion was denied.

Appellant being denied his unanimous verdict motion does not amount to prejudice to appellant, as appellant was not entitled to a unanimous verdict. Even assuming arguendo Judge Smith denied the motion because Judge Pritchard directed him to, appellant was not entitled to the granting of the motion. It is true that Judge Smith denied appellant's unanimous verdict motion, but that was a ruling that was correct in law, so it does not follow that appellant suffered prejudice from this proper ruling. We also note that it seems to follow that even if Judge Pritchard had granted the motion it would have been clarified on appeal that appellant was entitled to no such unanimous verdict right. In other words, appellant's motion for unanimous verdict would have been ultimately denied with either Judge Smith or Judge Pritchard presiding, in different ways, and irrespective of the comment "you will deny the motion and move on." It is not obvious to this court what actual prejudice appellant suffered as he was not entitled to this substantial right. *See* UCMJ art. 37(c), 10 U.S.C § 837 (2018 & Supp. I 2020). Thus, and relatedly, we turn to appellant's last assignment of error.

### D. Judicial Reassignment of Appellant's Case

---

[14] Congress amended Article 37 to include a provision that expressly requires that "[n]o finding or sentence of a court martial may be held incorrect on the ground of a violation of this section *unless the violation materially prejudices the substantial rights of the accused.*" UCMJ art. 37(c), 10 U.S.C. § 837 (2018 & Supp. I 2020) (emphasis added). The change would seem to vitiate the current apparent unlawful command influence "intolerable strain" and "disinterested observer" jurisprudence. *Boyce*, 76 M.J. at 248 (cleaned up). Although appellant argues he was prejudiced by not receiving a trial objectively seen to be fair, we again highlight that appellant has not shown that he suffered any individual prejudice as required by the new Article 37.

Appellant argues that the reassignment of his case to Judge Smith was reversible error for three reasons: (1) it denied appellant due process because it was an impermissible attempt to influence the outcome of the proceedings, (2) it resulted in the likely bias of Judge Smith, and (3) the reassignment prejudiced appellant.

### 1. Constitutional Due Process Right to an Impartial Judge

A military judge has a "duty to sit on a case when not disqualified." *United States v. Witt*, 75 M.J. 380, 383 (C.A.A.F. 2016) (citing *Laird v. Tatum*, 409 U.S. 824, 837 (1972)). Rule for Courts-Martial 902 states a military judge may be disqualified from a case in general if: (1) "impartiality might reasonably be questioned" or (2) under specific grounds, which includes actual bias.[15] R.C.M. 902(a), (b).

An accused has a "constitutional right to an unbiased and impartial judge" and a "military due process right to a judge who appears fair and impartial." *United States v. Cooper*, 51 M.J. 247, 249-50 (C.A.A.F. 1999) (citing *Tumey v. Ohio*, 273 U.S. 510, 523-35 (1927); *United States v. Ramos*, 42 M.J. 392, 396 (C.A.A.F. 1995); *United States v. Reynolds*, 24 M.J. 261, 264 (C.M.A. 1987)) (internal quotation marks omitted).

Appellant asserts Judge Pritchard displayed judicial bias when he sought to influence the outcome of the proceedings by removing himself so the case would be reassigned to another military judge that he knew would deny a motion for unanimous verdict.[16] At trial, appellant did not object to the military judge reassignment despite having multiple opportunities to do so, to include when he was first notified by Judge Pritchard he would be replaced as the judge and again when Judge Smith asked on the record if any party wanted to challenge or question him. We therefore find appellant forfeited the issue of whether the reassignment violated his constitutional due process right to an impartial judge at trial.

---

[15] *See* R.C.M. 902(b) for a complete list of "specific grounds" disqualifying a military judge from a particular case.

[16] We note that the reassignment from Judge Pritchard to Judge Smith occurred prior to assembly of the court. Additionally, we note that R.C.M. 505(e)(1) states that prior to assembly "the military judge . . . may be changed by an authority competent to detail the military judge . . . , without cause shown on the record." This same rule states that even a change in a military judge after assembly may be permissible with good cause shown. R.C.M. 505(e)(2). "Good cause" includes "military exigency, and other extraordinary circumstances which render the . . . military judge . . . unable to proceed with the court-martial within a reasonable time." R.C.M. 505(f).

This court reviews forfeited constitutional issues concerning judicial impartiality for plain error. *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011). "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice." *Id.* (citing *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008)). "[W]here a forfeited constitutional error was clear or obvious, 'material prejudice' is assessed using the 'harmless beyond a reasonable doubt' standard set out in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)." *United States v. Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F. 2019) (citation omitted). "That standard is met where a court is confident that there was no reasonable possibility that the error might have contributed to the conviction." *Id.* (citing *Chapman*, 386 U.S. at 24).

### 2. *Prejudice and Reversal Under Liljeberg*

Judge Pritchard was present for duty and not otherwise disqualified to hear appellant's case. However, anticipating a motion for unanimous verdict, his likely decision, and likely appellate stay, he declined to hear it. For purposes of this assignment of error, we will assume without deciding that Judge Pritchard should have remained on appellant's case, and we focus our discussion instead on (1) whether appellant's substantial rights were materially prejudiced by the transferring of his case from Judge Pritchard to Judge Smith and (2) whether the reassignment warrants reversal under *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988). Under the *Liljeberg* test, "it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Martinez*, 70 M.J. at 159 (cleaned up).

Appellant argues the reassignment prejudiced appellant and that the *Liljeberg* factors warrant reversal of his convictions. *See Martinez*, 70 M.J. at 158 (adopting the *Liljeberg* factors to determine whether a military judge's conduct warrants reversal, even if the court finds no prejudice). In citing *Liljeberg*, appellant urges this court to enforce appellant's rights so that future judges in other cases would more carefully consider their reasons for reassignment. Appellant further argues that appellant's rights being sacrificed for judicial expediency presents a grave risk of undermining the public's confidence in our military justice system.[17] Given there

---

[17] Rule for Courts-Martial 102(b) states "[t]hese rules shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." Additionally, the Preamble, paragraph 3 states "[t]he purpose of military law is to promote justice, to assist in maintaining good order and discipline in the armed forces, to promote efficiency and effectiveness in

(continued . . .)

is no right to a unanimous guilty verdict in courts-martial, we find only the second and third *Liljeberg* factors applicable in this case.

Similar to appellant's prior assignment of error we begin with whether appellant suffered prejudice from his case being transferred from Judge Pritchard to Judge Smith. Whether Judge Pritchard or Judge Smith tried appellant's case, appellant was not entitled to a unanimous guilty verdict, so the transferring of the case between judges does not trample a right of appellant that he did not possess. Appellant cannot demonstrate prejudice through this reassignment, as appellant's constitutional due process right affords him an impartial judge, not a right to a particular judge he perceives to be more likely to rule in his favor. As to the appearance of bias somehow being the prejudice to appellant, it does not appear to this court that by Judge Smith sitting on appellant's case a reasonable person would question his impartiality, or the impartiality of Judge Pritchard who did not sit on the case. *See United States v. Uribe*, 80 M.J. 442, 446 (C.A.A.F. 2021) ("The test for identifying an appearance of bias is whether a reasonable person knowing all the circumstances would conclude that the military judge's impartiality might reasonably be questioned.") (cleaned up). We pause to highlight that Judge Smith provided a well cited decision on the unanimous verdict motion, did not appear to commit any erroneous rulings or prejudicial errors at trial and appears to have fairly presided over appellant's trial with impartiality. There is no evidence to the contrary. That said, appellant seems to end up in the same position regardless – either judge sitting on appellant's case would have eventually resulted in a determination that appellant was not entitled to a unanimous verdict. Even if we assume the reassignment was clear or obvious error, the resulting denial of appellant's unanimous verdict motion was harmless beyond a reasonable doubt because it had no effect on appellant's conviction. Appellant does not have a right to a unanimous guilty verdict. Appellant cannot demonstrate plain error as he has failed to show any material prejudice resulted from the judicial reassignment in his case.

Finally, appellant has not shown how the reassignment of the military judge in his case risks producing injustice in other cases, or undermining the public's confidence in the military judicial process when he was tried before a judge who was thorough, fair, and impartial. We therefore find reversal pursuant to *Liljeberg* is not warranted in this case.

---

(. . . continued)
the military establishment, and thereby strengthen the national security of the United States." Given these authorities, while judicial expediency does not trump an accused's rights, it is a consideration that may be balanced with those rights.

## CONCLUSION

On consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge WALKER and Judge EWING concur.

FOR THE COURT:

*James W. Herring, Jr.*

JAMES W. HERRING, JR.
Clerk of Court